Nos. 22-1204, 22-1205

# In the United States Court of Appeals for the First Circuit

_____

**UNITED STATES OF AMERICA,**
*Appellee,*

v.

**YAVIER MOJICA-RAMOS,**
*Defendant-Appellant*

_____

Direct Appeal from the United States District Court
for the District of Puerto Rico
Case Nos. 13-cr-840-FAB, 20-cr-374-FAB
Hon. Francisco A. Besosa, U.S. District Judge

_____

## APPELLANT'S OPENING BRIEF

_____

**ERIC ALEXANDER VOS**
Federal Public Defender
District of Puerto Rico
241 F.D. Roosevelt Ave.
San Juan, PR 00918
T. (787) 281-4922
F. (787) 281-4899
E. Kevin_Lerman@fd.org

**FRANCO L. PÉREZ-REDONDO**
Assistant Federal Public Defender
Supervisor, Appeals Division

**KEVIN E. LERMAN**
Research & Writing Attorney

*Attorneys for Defendant-Appellant
Yavier Mojica-Ramos*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.............................................................................v

JURISDICTIONAL STATEMENT .....................................................................1

ISSUES PRESENTED .................................................................................2

STATEMENT OF THE CASE............................................................................3

    A.    This is an appeal following sentencings for automatic-pistol possession and supervised-release revocation.............3

    B.    Puerto Rico police raided and searched a hair salon, asserting they saw Mr. Mojica without a Covid-19 facemask. ...............................................................................4

    C.    Mr. Mojica moved for suppression. .......................................6

    D.    The sentencing judge makes pre-plea comments about the seriousness of the conduct. ....................................................6

    E.    Mr. Mojica pleaded guilty under a plea agreement. .............7

    F.    The government's sentencing advocacy focused the court's attention on what it called "exceptional" "danger to the community and serious nature of the offense." ......................7

    G.    The court rejected Mr. Mojica's attempts to address claims of breach....................................................................10

        1.    Mr. Mojica moved to compel specific performance......10

        2.    The court denied the specific-performance request. ...13

    H.    The court imposed a 72-month sentence, nearly double the 37-month low-end, and 56-percent higher than the sentence the government agreed to recommend. .................18

    I.    In the revocation proceeding based mainly on the same conduct, the court varied up from a 24-to-30-month range to impose the statutory maximum sentence .........................25

SUMMARY OF THE ARGUMENT ................................................... 28

ARGUMENTS AND AUTHORITY ................................................. 30

I.  THE GOVERNMENT MATERIALLY BREACHED ITS PROMISE TO
RECOMMEND A WITHIN-GUIDELINE SENTENCE. ................................. 30

    A.  The government did not keep its promise to recommend a
guideline sentence before a judge the government knew
varies upward based on the types of argument and
material the government submitted. ................................... 31

        1.  The government's sentence recommendation left no
doubt that it constructively and zealously sought an
upward variance. .......................................................... 35

        2.  The government's attacks on mitigation advocacy
further breached the plea agreement. ........................ 41

        3.  The government continued to breach the plea
agreement and make known its request for an
upward variance during the revocation proceedings. . 43

    B.  The breach was not cured or excused by the
government's duty to present information. .......................... 46

        1.  No disclosure obligation had kicked in to invite the
government's submission. ............................................ 47

        2.  The government's unsolicited arguments and
undated digital files were not mere information ........ 48

    C.  The prosecutor's stated requests for a 46-month sentence
did not cure breach or negate the probable impact of the
prosecutor's substantive arguments and submission. ......... 50

    D.  The breach here is so egregious that this Court should
order reduced sentences in both matters. ........................... 53

    E.  The revocation sentence should be reversed. ...................... 56

II.   THE COURT'S EXTREME UPWARD VARIANCES ARE PROCEDURALLY AND SUBSTANTIVELY INFIRM............................................................57

    A.   The court's sentence — based on unreliable evidence and outside-the-record assertions — is procedurally unreasonable. .......................................................................57

        1.   Both sentences suffered from reliance on the government's digital-image-and-video submissions....58

        2.   The sentence is procedurally unreasonable for its basing a purported *Kimbrough* variance on undisclosed, unreliable, and outside-the-record factual assertions. .......................................................61

    B.   In addition to the court's procedural errors, Mr. Mojica's disparate sentence is substantively unreasonable because the record does not justify the 132-month plus 6 months' home detention sentence.......................................................65

        1.   The court failed to explain any basis to give extra weight to factors already elevating the guideline range.............................................................................67

        2.   The court improperly considered, and gave excessive weight to, the notion that the simple possession offense had any link to other persons' violent crime in Puerto Rico...........................................................68

CONCLUSION ...............................................................................70

CERTIFICATE OF COMPLIANCE ..................................................71

CERTIFICATE OF SERVICE ...........................................................71

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Berger v. United States*,
  295 U.S. 78 (1935)...............................................................................55

*Gall v. United States*,
  552 U.S. 38 (2007)............................................................ 57, 65, 67

*Holguín-Hernández v. United States*,
  140 S. Ct. 762 (2020).....................................................................65

*Pepper v. United States*,
  562 U.S. 476 (2011).........................................................................69

*Puckett v. United States*,
  556 U.S. 129 (2009).................................................................. 30, 31

*Rita v. United States*,
  551 U.S. 338 (2007).........................................................................35

*Santobello v. New York*,
  404 U.S. 257 (1971)...............................................................*passim*

*United States v. Aguilar-Peña*,
  887 F.2d 347 (1st Cir. 1989) .........................................................69

*United States v. Almonte-Núñez*,
  771 F.3d 84 (1st Cir. 2014) ...................................................... 46, 47

*United States v. Atwood*,
  963 F.2d 476 (1st Cir. 1992) .........................................................42

*United States v. Cachucka*,
  484 F.3d 1266 (10th Cir. 2007).....................................................33

*United States v. Canada*,
  960 F.2d 263 (1st Cir. 1992) ........................................ 30, 32, 51, 53

*United States v. Carrión-Meléndez,*
  26 F.4th 508 (1st Cir. 2022) ........................................................ 17, 60

*United States v. Castillo-Torres,*
  8 F.4th 68 (1st Cir. 2021) .................................................................. 61

*United States v. Clark,*
  55 F.3d 9 (1st Cir. 1995) .................................................................... 30

*United States v. Colón-Maldonado,*
  953 F.3d 1 (1st Cir. 2020) .................................................................. 59

*United States v. Crespo-Ríos,*
  787 F.3d 34 (1st Cir. 2015) .......................................................... 65, 66

*United States v. Díaz-Díaz,*
  2020 WL 12575067 (1st Cir. Aug. 21, 2021) ..................................... 40

*United States v. Díaz-Lugo,*
  963 F.3d 145 (1st Cir. 2020) .............................................................. 40

*United States v. Dicus,*
  579 F. Supp. 2d 1142 (N.D. Iowa 2008) ............................................ 54

*United States v. Fernández-Garay,*
  788 F.3d 1 (1st Cir. 2015) .................................................................. 66

*United States v. Flores-González,*
  34 F.4th 103 (1st Cir. 2022), *reh'g en banc granted, opinion
  withdrawn*
  (1st Cir. Aug. 22, 2022) ..................................................................... 40

*United States v. Frazier,*
  340 F.3d 5 (1st Cir. 2003) .................................................................. 42

*United States v. García-Pérez,*
  F.4th 48 (1st Cir. 2021) ..................................................................... 40

*United States v. Gonczy,*
  357 F.3d 50 (1st Cir. 2004) ...................................................... *passim*

*United States v. Heredia,*
    768 F.3d 1220 (9th Cir. 2014) ................................................................. 41

*United States v. Jiménez-Beltre,*
    440 F.3d 514 (1st Cir. 2006) ................................................................. 66

*United States v. Kurkculer,*
    918 F.2d 295 (1st Cir. 1990) ................................................................. 31

*United States v. Lessard,*
    35 F.4th 37 (1st Cir. 2022) ................................................................. 51

*United States v. Malone,*
    51 F.4th 1311 (11th Cir. 2022) ................................................................. 50

*United States v. Marrero-Pérez,*
    914 F.3d 20 (1st Cir. 2019) ................................................................. 53, 60

*United States v. Meserve,*
    271 F.3d 314 (1st Cir. 2001) ................................................................. 52

*United States v. Narváez-Soto,*
    773 F.3d 282 (1st Cir. 2014) ................................................................. 15, 52

*United States v. Ortiz-Rodríguez,*
    789 F.3d 15 (1st Cir. 2015) ................................................................. 69

*United States v. Ramos-Carreras,*
    55 F.4th 51 (1st Cir. 2022) ................................................................. 57, 64

*United States v. Riggs,*
    287 F.3d 221 (1st Cir. 2002) ................................................................. *passim*

*United States v. Rivera-Berríos,*
    968 F.3d 130 (1st Cir. 2020) ................................................................. 40, 64, 66, 68

*United States v. Rivera-Ruiz,*
    43 F.4th 172 (1st Cir. 2022) ................................................................. 59, 60, 61

*United States v. Rodríguez-Delma,*
    456 F.3d 1246 (10th Cir. 2006) ................................................................. 49

*United States v. Saxena,*
   229 F.3d 1 (1st Cir. 2000) ................................................ 14, 17, 32, 51

*United States v. Soto-Soto,*
   855 F.3d 445 (1st Cir. 2017) ............................................................. 66

*United States v. Tanco-Pizarro,*
   892 F.3d 472 (1st Cir. 2018) ............................................................. 65

*United States v. Ubiles-Rosario,*
   867 F.3d 277 (1st Cir. 2017) ............................................................. 50

*United States v. Vaval,*
   404 F.3d 144 (2d Cir. 2005) .............................................................. 33

*United States v. Vega-Santiago,*
   519 F.3d 1 (1st Cir. 2008) (en banc) ................................................ 63

*United States v. Vélez Carrero,*
   77 F.3d 11 (1st Cir. 1996) .......................................................... 30, 32

*United States v. Villa-Vázquez,*
   536 F.3d 1189 (10th Cir. 2008) ........................................................ 55

*United States v. Viloria-Sepúlveda,*
   921 F.3d 5 (1st Cir. 2019) .............................................. 16, 36, 37, 48

*United States v. Zapete-García,*
   447 F.3d 57 (1st Cir. 2006) ......................................................... 66, 68

## FEDERAL STATUTES

18 U.S.C. § 3231 .................................................................................. 1

18 U.S.C. § 3553(a) ..................................................................... *passim*

18 U.S.C. § 3583 .................................................................................. 1

18 U.S.C. § 3661 ................................................................................ 46

18 U.S.C. § 3742(a) ............................................................................. 1

18 U.S.C. § 922(o) ........................................................ 5, 43, 44, 56

18 U.S.C. § 924(c)(1)(A)(i) ............................................. 3, 4, 10

26 U.S.C. § 5861(d) ............................................................... 5

28 U.S.C. § 1291 ................................................................... 1

28 U.S.C. § 2106 ................................................................. 55

28 U.S.C. § 991(b)(1)(B) ..................................................... 69

## OTHER AUTHORITIES

A. Smith, *Biden's Gun Control Doesn't Target Gat Cranks Mimicking Machine Guns*,
Forbes (Apr. 1, 2021: 07:09 EST) ........................................ 5

ATF, *Firearms Commerce in the United States Annual Statistical Update 2020* (2020) ................................................................. 5

Governor of Puerto Rico, Exec. Order 2020-020 (March 12, 2020) .......... 4

Justice Man. 9-27.400 ......................................................... 16

Justice Man. 9-27.720 cmt. 3 ............................................... 17

S. Starr, *Sentence Reduction as a Remedy for Prosecutorial Misconduct*,
97 Geo. L. J. 1509 (2009) ................................................. 54

## RULES

Fed. R. Crim. P. 32 ....................................................... 62, 63

Fed. R. Crim. P. 51(b) ........................................................ 58

**Nos. 22-1204, 22-1205**

# In the United States Court of Appeals for the First Circuit

————————————

**UNITED STATES OF AMERICA,**
*Appellee,*

v.

**YAVIER MOJICA-RAMOS,**
*Defendant-Appellant.*

————————————

Direct Appeal from the United States District Court
for the District of Puerto Rico
Case Nos. 13-cr-840-FAB, 20-cr-374-FAB
Hon. Francisco A. Besosa, U.S. District Judge

————————————————————————————————

### APPELLANT'S OPENING BRIEF

————————————————————————————————

TO THE HONORABLE COURT:

The defendant-appellant, Yavier Mojica-Ramos ("Mr. Mojica"), represented by the Federal Public Defender of the District of Puerto Rico, through undersigned counsel, respectfully states and prays:

## JURISDICTIONAL STATEMENT

In this consolidated challenge to an aggregate 132-month sentence, Mr. Mojica timely appealed on March 9 and 10. A14, A447.[1]

On March 8, 2022, the district court, which had original jurisdiction, 18 U.S.C. § 3231, entered judgment in 20-cr-374-FAB, imposing a 72-month sentence. AD1-AD7.

The district court, having jurisdiction under 18 U.S.C. §§ 3231 and 3583, entered an amended judgment in 13-cr-840-FAB on March 8, 2022, imposing a 60-month consecutive revocation sentence. AD8-AD19.

Jurisdiction in this Court is under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

---

[1] Abbreviations: Appendix (A[]); Supplemental Appendix (SA[]); Addendum (AD[]); Docket Entries (DE-[]).

## ISSUES PRESENTED

I.   An automatic-gun-possession plea agreement called for a guideline-sentence recommendation. Though the government mouthed a within-guideline request, it argued the offense was exceptionally serious and dangerous, stating that Mr. Mojica likely committed other weapons-of-war-based crimes in a Puerto Rico with high gun-violence rates. It used hundreds of undated, unverified gun and drug images and video from Mr. Mojica's phone to make these arguments. Was this a breach of the agreement?

II.A.  Due process and procedural reasonableness require that sentence-enhancing evidence be reliable. Over objection, the court relied on hundreds of undated, unverified digital files to impose an enhanced sentence based on the court's finding that Mr. Mojica had an insidious affinity for guns. It also based its sentence on factual assertions about unsupported dynamics of automatic-firearm discharge. Did the court violate due process and issue a procedurally unreasonable sentence?

II.B.  Sentences must not be greater than necessary to meet § 3553(a)'s goals. Substantial variances require substantial justifications. And sentences must be individualized and not based on improper factors. The court imposed variances of 156.5 percent and 200 percent from the high-end Guideline ranges based on generalized assertions about the application of statutory factors along with a focus on gun violence in Puerto Rico. The court gave extra weight to factors. Is the court's sentence unreasonable?

STATEMENT OF THE CASE

**A.    This is an appeal following sentencings for automatic-pistol possession and supervised-release revocation.**

In October 2020, a month before turning 29, Mr. Mojica had two illegal pistols that could fire in automatic mode. SA2.

Mr. Mojica was raised in Juncos, a town in central-eastern Puerto Rico. SA17 ¶51. At 13, he defended his mother from an estranged partner who shot her in the collarbone. SA15-SA16 ¶47. Mr. Mojica intervened, repelling the man and saving her life. SA15-SA16 ¶47.

From age 17-20, Mr. Mojica started a family. His then partner had two daughters; they're now about 10 and 11. SA16-SA17 ¶50. After he turned 20, Mr. Mojica's father was gunned down, murdered. SA14 ¶43.

Before turning 21, Mr. Mojica was arrested with three others for drug-trafficking offenses resulting in 18 U.S.C. § 924(c)(1)(A)(i) convictions. The four young men were selling cannabis and heroin from a rural home in El Hoyo, a sector of Guaynabo. SA43-SA44 ¶9. Mr. Mojica's "father's murder deeply affected him"; "he made the wrong decisions and took the wrong road." SA46 ¶20.

He pleaded guilty to § 924(c), and was sentenced to a five-year custody term with five years' supervised release. A449-A450. In May 2018, he returned home, living under supervision for 29 months. A454.

**B.    Puerto Rico police raided and searched a hair salon, asserting they saw Mr. Mojica without a Covid-19 facemask.**

On October 23, 2020, Mr. Mojica went to get his hair cut at A&E Hair Club, a Caguas, Puerto Rico salon. A46. Undercover police were there watching for people without face coverings during the Covid-19 pandemic.[2] *See* A46. Mr. Mojica had his bare face out while toting a shoulder purse. *See* A46. Without asking him to don a hygienic facemask, the undercovers summoned multiple backup units and a firearm-sniffing dog. A46. The police squad assembled and raided the salon. *See* A46. Seizing the salon occupants, police led the dog to Mr. Mojica's accessory bag; the dog alerted; officers non-consensually searched it. *See* A46-A47.

---

[2] In March 2020, then-Puerto Rico governor Wanda Vázquez-Garced declared a Covid-19 emergency by executive order and ordered an archipelago-wide lockdown impacting virtually every aspect of private, commercial, and governmental activity. Governor of Puerto Rico Exec. Order 2020-020 (March 12, 2020). Vázquez-Garced purported to criminalize noncompliance with up to six months' imprisonment. Exec. Order 2020-029 § 18 (March 30, 2020).

Inside, there were two Glock pistols, 60 rounds, some cannabis, and single oval pill. *See* A46-A47.

Learning of the Hair Club search, seizure, and arrest, federal prosecutors accused Mr. Mojica of breaking two firearm-possession laws: 18 U.S.C. § 922(g)(1), for having a gun after being convicted of a felony, and § 922(o)(1), for having a gun that could fire more than one bullet with a single trigger action without it being legally registered.[3] A15-A17.

A probation officer separately alleged that having the firearms violated supervised-release conditions. A447-A452. Probation also accused him of consuming cannabis products five months earlier and missing a urine-sample-collection appointment weeks before his arrest. A456.

---

[3] Automatic-gun possession is not categorically illegal. Automatic guns from before May 19, 1986 are legal. *See* Firearms Owners' Protection Act, Pub. L. No. 99-308, § 110(c), 100 Stat. 449, 461 (1986); 18 U.S.C. § 922(o)(2)(B); 26 U.S.C. § 5861(d); 27 C.F.R. §§ 478.36, 479.105. As of 2020, 726,951 legal automatic guns were legally registered. ATF, *Firearms Commerce in the United States Annual Statistical Update 2020*, 15 (2020), https://www.atf.gov/file/149886/download. Further, until March 26, 2019, bump-fire devices were lawful before they were classified by the ATF as "machine guns." *See* 27 C.F.R. §§ 447.11, 478.11, 479.11. A different modification known as a trigger crank is still legal. *See* A. Smith, *Biden's Gun Control Doesn't Target Gat Cranks Mimicking Machine Guns*, Forbes (Apr. 1, 2021: 07:09 EST), https://www.forbes.com/sites/aaronsmith/2021/04/01/bidens-gun-control-doesnt-target-gat-cranks-mimicking-machine-guns/?sh=45a312c75804.

**C.    Mr. Mojica moved for suppression.**

In May 2021, Mr. Mojica moved to suppress the firearm evidence, alleging Fourth Amendment violations by police under the Vázquez-Garced masking order. A18-A33. He then informed the court that a plea agreement had been reached pending supervisory prosecutors' approval. A34-A35.

**D.    The sentencing judge makes pre-plea comments about the seriousness of the conduct.**

At a July 2021 status conference, the court asked why the defense had been seeking a plea agreement similar to the one in *United States v. Peña-Vázquez*, D.P.R. Case No. 20-cr-104-PAD. A428-A429. The court said it saw Mr. Mojica's case as more serious than *Peña-Vázquez*, where the defendant had illegally possessed a gun while, like Mr. Mojica, he was on a supervised-release term for a § 924(c) offense.

The court opined that, even though Peña-Vázquez possessed machine guns, this case was more serious because Peña-Vázquez was not convicted of the machine-gun-prohibition statute. The judge admonished the defense, saying he understood the position of the U.S. Attorney's Office supervisors who would not agree to recommend a more lenient sen-

tence. A429. The judge added that counsel needed to learn how to spell the word "no" and tell his client "no."  A429.

### E.     Mr. Mojica pleaded guilty under a plea agreement.

The government-drafted facts elaborately described the facemask-enforcement operation, the offense location, the guns and ammunition and Mr. Mojica's shoulder bag's contents. A46-A48.

They did not include references to additional materials submitted later based on stored images and video from a storage chip in Mr. Mojica's cellphone. *See* A46-A48.

The prosecutor change-of-plea-hearing remarks summarized the plea's "most important terms." A378. These included the parties' recommendation "that Mr. Mojica be sentenced … within the offense level of 19 and the criminal history … determined by the Court." A377-A378.

### F.     The government's sentencing advocacy focused the court's attention on what it called "exceptional" "danger to the community and serious nature of the offense."

The probation officer who prepared Mr. Mojica's 2014 PSR prepared the new PSR. *See* SA1, SA39. Probation asserted the officer identified upward-variance-justifying bases:

> 100. This officer has identified factors that may warrant a sentence outside of the advisory guide-

lines…. The Court may … consider[] the defendant's history and characteristics, the nature, and circumstances of the offense, [and] the need to promote respect for the law and afford adequate deterrence for the crimes committed by the defendant.

101. In sentencing this defendant to a variance, the Court may consider that the defendant while on supervised release for a prior federal case in which he was convicted of possessing firearms in furtherance of a controlled substance offense, was found [possessing] two machine guns, two extended magazines and … marihuana. The defendant's disregard for the law and minimal commitment to his rehabilitation process were demonstrated by defendant's lack of any verifiable regular employment and community service while on supervision for his prior case. Irrespective of defendant's prior criminal conviction and the opportunities provided during the supervised release term, Mr. Mojica engaged in similar conduct which led to his arrest and conviction for the instant case.

SA26 ¶¶100-101.

Just before the PSR was completed, a new AUSA appeared. A49-A50.

Mr. Mojica objected to the PSR's proposed bases for varying. A51-A52. The court ordered the prosecution and Probation to respond to his objections. A8 (DE-53). The government missed the deadline but responded some weeks later. A317-A322.

Prior to responding, the prosecutor filed a 255-page submission, including a sentencing memorandum, A53-A66, and a 240-page attachment containing images the prosecutor selected from a storage chip in Mr. Mojica's phone after police seized it. A67-306. A final page indicated that a DVD exhibit would be delivered to the court. A307.

The government argued its images showed the "embrace [of] firearms, narcotics and violent criminal behavior." A55-A306. Screenshots from an apparent Snapchat video showed a person allegedly holding a gun while their face was partially covered by a cartoon panda face. A58. The prosecutor labeled it with the words "Assault-Style Rifle" and placed Mr. Mojica's mugshot in the margin. A58.

The memorandum called Mr. Mojica's "danger to the community and the serious nature of the offense" "exceptional." A61. It suggested he "participates in other criminal activity involving high-capacity, high-powered weapons of war." A61. And it stated that "[t]he nature of the offense in this case *goes beyond* the simple possession of a machinegun." A60 (emphasis added). On various pages, it suggested Mr. Mojica participates in other criminal activity. A55, A58, A61, A65.

G.   **The court rejected Mr. Mojica's attempts to address claims of breach.**

The day the government submitted its sentencing materials, Probation filed an amended PSR and an addendum; it stood by the upward-variance-endorsing paragraphs. SA28-SA29; A8 (DE-56-57).

**1. Mr. Mojica moved to compel specific performance.**

Mr. Mojica moved to continue sentencing to respond to the government's memorandum, which counsel believed breached the plea agreement. A308-A316. The court, however, voiced its support for the government's pleading the same day: "Notwithstanding[] what is contained in the government's sentencing memorandum …, the government is requesting a sentence as agreed in the plea agreement." A8 (DE-61).

Mr. Mojica then filed his sentencing memorandum. SA31-SA38. He argued the court should consider the sentence imposed in *United States v. Vázquez-Peña*, D.P.R. Nos. 20-104, 14-498, which resulted in a within-the-guidelines automatic-gun-possession sentence for someone on supervised release following a § 924(c) conviction. *See* SA35-SA36.

The government then submitted a "Response to Defendant's Objections to the Presentence Report." A317-A322. There, the government wrote that it did not breach the plea agreement. A318-A319. It

argued its aggravating facts and arguments meant only to support a high-end sentence or were otherwise there based on a duty to the court.[4] A319-A320.

Mr. Mojica then filed a motion formally arguing that the government breached its promise to recommend a within-guideline sentence. A323-A337. The motion spelled out how the government's arguments and digital images of alleged guns and drugs substantively supported an above-the-guidelines sentence. A323-A337.

The court held a status conference. A9 (DE-68); A419-A425. The court thought Mr. Mojica's request for specific performance was a motion to recuse, saying it boiled down to counsel's belief that the judge was a harsh sentencer. A424. Counsel explained the thrust of the request was not based on the judge's actions but on the court's exposure to the breaching materials. A422. The remedy sought was the one commonly applied, but the court stated it did not understand and complained that this was the second time the issue was raised. A422-A423.

---

[4] While the plea agreement ostensibly permitted a recommendation of up to the high end, it called for recommendations *within* guideline range. A38-A39; A377-A378.

Ordered to respond, the government agreed the remedy under *Santobello* is resentencing by another judge or the opportunity to withdraw the plea. A341; *see Santobello v. New York,* 404 U.S. 257, 262 (1971). The government maintained it hadn't breached because it asked for 46 months, and only submitted the arguments and gun and drug depictions to advocate for a high-end sentence. A342-A344. The government criticized Mr. Mojica's own memorandum for not reciting the number of months he sought. A345. The government called what it had submitted "facts," and what Mr. Mojica submitted "dramatic language, evasion of responsibility, and unsubstantiated allegations…." A344-A345.

The government blamed Mr. Mojica for being "focus[ed] on singular syntactic choices" the government made. A346.  The government claimed it didn't breach because it hadn't repeated key phrases. A346-A347. It stated it only said once that Mr. Mojica likely "participates in other criminal activity involving high-capacity, high-powered weapons of war," A61; A346. It hypothesized just once that Mr. Mojica's "danger to the community and the serious nature of the offense should be considered exceptional." A339, A346; *see* A60.

The government didn't defend additional statements including its argument that "[t]he nature of the offense in this case *goes beyond* the simple possession of a machinegun." A60 (emphasis added). It didn't comment on its repeated suggestion that Mr. Mojica participates in other uncharged criminal activity. A55, A58, A61, A65.

In reply, Mr. Mojica noted the government cannot distinguish its submission from others in cases seeing upward variances. A352-A361. The reply argued that the government's admission that it had not actually vetted or analyzed the undated digital files it submitted eviscerated any notion that the government was dutybound to file them. A355-A356. Mr. Mojica argued the government couldn't deny that the "probable outcome" of its digital materials along with its local-violent-propensity memo and exceptional-dangerousness arguments was an upward variance. A359-A360 (citation omitted).

## 2. The court denied the specific-performance request.

The court's written order narrowly construed the breach issue as whether the government technically recommended 46 months, whether the digital images were admissible, and whether the government's

characterization of § 3553(a)(1) factors as "exceptional" violated the plea. AD20-AD33 (published at 585 F. Supp. 3d 171).

The order concluded the parties had no factual disputes. A20. It concluded the government recommended a within-guideline sentence because its sentencing memorandum wrote that a 46-month sentence was warranted. AD26. The court didn't decide whether the government's arguments were substantively consistent with arguments that would move the court to vary upwardly. AD20-AD33.

Though the government had told the court it contemplated the digital images and video in entering the plea,[5] the court asserted that all the United States had done was "obtain[] relevant information after entering into the plea agreement, but before the sentencing hearing" and given that to the court. A30. For the court, the prosecutor's post-plea forensic fracking and submission were analogous to *United States v. Saxena*, 229 F.3d 1 (1st Cir. 2000), where the defendant had apparently started a

---

[5] A318 (arguing the information from the cellphone-contained file was factored into the government's within-guideline recommendation); A38-A39 (recommending a within-guideline sentence "after due consideration" of the § 3553(a) factors").

new investment fraud scheme after pleading guilty to fraud charges and the government found out. A30.

The court also concluded that, prior to filing its 255-page submission, the government had no duty to authenticate or otherwise vet the images it submitted. A61. The court was satisfied based on the relatively low preponderance-of-the-evidence standard. AD31-AD32.

The court didn't address whether the government's arguments persuaded it to contemplate an upward variance. The court did, however, cite *United States v. Narváez-Soto*, 773 F.3d 282 (1st Cir. 2014), in defending the government's arguments suggesting that people who possess guns in Puerto Rico should be sentenced higher due to the population's higher propensity to murder others. *Id.* 285-86. Quoting *Narváez-Soto*, Judge Besosa reiterated his own previous decision: "based on this Court's 'reasoned determination, predicated on its experience … gun-related violent crime [] is an acute problem in Puerto Rico.'" *Id.* at 286; A32. In *Narváez-Soto*, the referenced material formed part of the stated basis for the following variance:

| | |
|---|---|
| **Count 1:** 108-135 months | **Count 2:** 84-month minimum |
| **Sentence:** 240 months. | **Sentence:** 120 months |

*Id.* at 285.

The court denied all relief Mr. Mojica requested. AD32-AD33.

Mr. Mojica objected. A362-A366. He argued that the court's order illustrated that it had been unduly influenced by the breach. Among objections were the following: "The government submitted its 255-page memorandum aware [that] the content was indistinguishable from the submissions in [upward-variance cases]" including *Viloria-Sepúlveda*, *Vega-Rodríguez*, *Carmona-Alomar*, *Nieves-Diaz*, and myriad cases....; "[t]he government had all the photographs and video at the time of the plea agreement's negotiation..."; the "government either withheld its intention to submit" its materials during the plea process "or developed that intention after inducing Mr. Mojica to plead guilty..."; "[b]y leaving the digital exhibits out of the ... stipulation of facts only to submit them for sentencing, without verifying its authenticity, or origin, the government ran afoul of the Justice Manual, which requires plea agreements to 'honestly reflect the totality and seriousness of the defendant's conduct.'... (citing ... Justice Man. 9-27.400)"; "[t]he government's awareness of probable outcomes ... that its advocacy fails to apply relevant sentencing factors to the facts in a way that most accurately and convincingly supports [its] recommended sentence....' Justice Man. 9-27.720

cmt. 3."; "'[p]art of the reason Mr. Mojica reasonably expected the gov-
ernment not to submit cell phone extraction materials was because con-
stitutional violations related to search, and seizure of the phone were
discussed, and the parties understood that litigation over the phone con-
tents was appropriately tabled based on the plea agreement…." A363-
A364.

Mr. Mojica further argued that the court's order mistakenly con-
cluded that the government's submissions were based on relevant infor-
mation it learned of *after* it entered into the plea agreement. A364.
Finally, Mr. Mojica cited *United States v. Carrión-Meléndez*, 26 F.4th 508
(1st Cir. 2022), which had been published since the court's order. He
argued he government had no solemn obligation to submit evidence it
had not examined for markers of reliability, and had not discussed or
raised previously. A364-A366.

Construing the objections as a motion to reconsider, the court did
not deny Mr. Mojica's bullet-point assertions or that the government's
255-page submission was — unlike in *Saxena* — not based on any event
that had occurred since the plea agreement was signed or any new
material the government had since discovered. AD34-AD36. The court

again defended the government's advocacy by characterizing the objections as based solely on the lack of reliability of the government-submitted digital files. AD36.

The court's reconsideration order did not address the proposition that the government had no obligation to submit materials as sentencing evidence if it had not actually examined and evaluated their reliability. Instead, the court focused on whether the submissions could be relied on to find that Mr. Mojica had an "'infatuation with firearms.'" AD37-AD38 (citing A55). The court concluded they could be, asserting that the government's digital-data excerpt supported the court's finding that "the nature of Mojica's affinity for firearms is insidious." AD38.

## H. The court imposed a 72-month sentence, nearly double the 37-month low-end, and 56-percent higher than the sentence the government agreed to recommend.

The February 2022 sentencing hearing opened with the court telling Mr. Mojica all his motions had been denied. A35-A36. Mr. Mojica asked the court to address his unopposed presentence-report objections to paragraphs 100-101, which stated factors Probation thought supported a variance. A394. Mr. Mojica stressed the factors listed had already been incorporated into the guideline range and thus didn't support an upward

variance. A394-A395. The court denied the motion. Counsel also stressed that the defense opposed any variance on the ground that a higher sentence would punish a "breach of trust" since he was on supervised release; the issue should be addressed at the revocation hearing. A395-A396. Denied.

The defense allocution emphasized mitigating factors under § 3553(a)(1). Mr. Mojica had endured the murder of his father and had saved his mother from being killed by her estranged partner. A396-A397. Defense counsel expressed the hope that Mr. Mojica's commitment to his two daughters would "break the cycle" Mr. Mojica had followed his parents into. A399-A400. Counsel further argued for a 37-month sentence. A399-A400.

The prosecutor stated the government stood by its recommendation made in the plea agreement and elsewhere, including in its 255-page (plus video) submission. A400. The prosecutor said he was "entitled to request a sentence at the upper end" and said the government wanted a 46-month sentence. A401.

The government professed that the subject non-violent offense was "really part of a broader problem [] in Puerto Rico where, frankly speak-

ing, armed *violent* crime is a disease." A401 (emphasis added). The prosecutor invoked his fear of future crime by hypothesizing that the community's propensity for violent crime had been briefly masked by a "once-in-a-lifetime pandemic." A401.

Where Judge Besosa's variances frequently emphasize 18 U.S.C. §3553(a)(2)(A) through (C), the prosecutor focused on those factors (after an undeveloped nod at § 3553(a)(1)). A402.

Mr. Mojica allocuted, expressing repentance for his action and apologizing to his mother. A403. He wished to move to Connecticut to live with his partner and wanted to change so his daughters would be proud of him. A403-A404.

The court adopted the anticipated range. A405-A406. The court then offered a brief biography of Mr. Mojica, A407, before delivering its usual automatic-gun colloquy with some additional flourishes:

> Mr. Mojica possessed two machine guns. A machine gun can fire more than a thousand rounds a minute, which allows a shooter to kill dozens of people within a matter of seconds. Short of bombs, missiles, and biochemical agents, the Court can conceive of few weapons that are more dangerous than machine guns. A machine gun is unusual, and outside of a few government-related uses, machine guns largely exist on the black market. In

short, machine guns are highly dangerous and unusual weapons that are not typically possessed by law-abiding citizens for lawful purposes.

According to the Supreme Court Kimbrough case, district courts may at sentencing not agree with the Sentencing Commission's policy in establishing guideline ranges for particular offenses. This is especially true in firearms, especially machine gun cases in this district. Both Defendant's firearms were modified to be machine guns. They were not firearms originally manufactured as machine guns. The guidelines do not differentiate between these two types of machine guns. Pistols modified to be fully automatic present dangers additional to those raised by manufactured machine guns. Machine pistols like the ones Defendant possessed are difficult, if not impossible, to control due to their recoil or kickback. This recoil causes the muscle of the weapon to change its direction, which then puts life or serious injury of people near the shooter's intended target in great danger. Contrary to manufactured machine guns, supports to counteract the recoil and control the weapon, the machine pistol, simply do not exist; even more so when the machine gun is in the hands of a shooter with no training to use it properly. A shooter's lack of training risks spraying a large amount of bullets helter-skelter, especially from a fully-loaded high-capacity magazine like the ones Defendant possessed. The guidelines do not account for this, which is one of the reasons the Court looks to Kimbrough, and disagrees with

the Sentencing Commission's low guideline range in machine gun cases.

Furthermore, the guidelines do not take into account the amount of ammunition or high-capacity magazines possessed by a defendant charged with possession of machine guns. Indeed, the First Circuit Court of Appeals has repeatedly held that large amounts of ammunition may warrant a variance because it is a consideration not adequately accounted for in the sentencing guidelines, and because they contribute to the lethalness of the machine gun.

Additionally, the Court is taking into account the serious and acute problem of gun violence in Puerto Rico, as the First Circuit … has acknowledged it may do. The statistics bear this out. Higher sentences for gun-related offenses do have a deterrent effect. Increased sentences for gun-related offenses decrease gun violence. The Sentencing Commission's statistics demonstrate that firearms offenders recidivate at a higher rate and more quickly than non-firearms offenders in every criminal history category. This high rate of recidivism among firearms offenders is another reason which supports the imposition of a sentence above the guideline range in this case, to protect the community from additional offenses by this defendant.

Defendant's prior case was also a firearms offense. In this case, Defendant had in his posses-

sion two machine guns, three magazines, two of which were extended high-capacity magazines, and 62 rounds of ammunition; 42 9mm caliber and 19 .40 caliber.

Today Mr. Mojica has requested a sentence of 37 months, and the Government has requested a sentence of 46 months of imprisonment. The Court finds that the sentences recommended by the parties do not reflect the seriousness of the offense, do not promote respect for the law, do not protect the public from additional crimes by Mr. Mojica, and do not address the issues of deterrence and punishment.

As set forth in … the amended [PSR], this is Mr. Mojica's second firearms offense. In his previous case, he possessed in furtherance of a drug trafficking crime two … Glock pistols, one AK-47 assault rifle, one Uzi assault carbine, and one short-barreled AR-15 assault rifle, 225 rounds of ammunition, 22 .40 caliber, 65 7.62 caliber, 25 9mm caliber, 113 rounds of .223 caliber, and six rounds of .380 caliber ammunition, two high-capacity magazines, one high-capacity drum magazine, and one high-capacity double-drum magazine.

The Court has identified those factors which warrant a variant sentence above the guideline range pursuant to … [18 U.S.C. § 3553(a)]. The Court has considered Mr. Mojica's total disregard for the law, as he committed a similar serious firearm offense within two years of serving his

> supervised release term in Criminal Case Number 13-840, in which he was convicted, as indicated, of possessing an arsenal of firearms in furtherance of a drug trafficking crime. Additionally, despite being provided opportunities during his supervision process, Mr. Mojica's lack of any verifiable employment, and non-compliance with the conditions of supervised release demonstrates Mr. Mojica's lack of commitment to his rehabilitation process.

A408-A412. The court then imposed a 72-month sentence with six month's home detention at the start of a three-year supervised-release term. A412.

The defense objected to the sentence as substantively and procedurally unreasonable, adding that it was evident the "Court relied on information that … was unreliable." A416. The government did not respond.

The defense further objected to the court's sua sponte imposition of an unnoticed *Kimbrough* variance, arguing *Kimbrough* "was misplaced in this case[] as there was no information that was presented to the Court reliable enough" to support it "as required by the sentencing proceeding." A416. "[For those reasons and the other reasons that we have presented in our motion to compel, in our reply, in our objection, and motion for

reconsideration to the Court's opinion and order, we object to the Court's sentenc[e]." A416-A417.

The government lodged no objection regarding the court rejections of its request. A419-A420.

## I.    In the revocation proceeding based mainly on the same conduct, the court varied up from a 24-to-30-month range to impose the statutory maximum sentence

When the court began revocation proceedings, the defense moved to incorporate Mr. Mojica's objections to the court's reliance on the government's use of unreliable images and video from Mr. Mojica's mobile device. A462. Noting the revocation stemmed from the same operative facts, Mr. Mojica requested a low-end 24-month sentence concurrent to the 72-month 18 U.S.C. § 922(o) sentence. A462.

The government responded that it had "metadata for the content found on defendant's cell phone and produced it to Counsel on August 3, 2021." A462.[6] The prosecutor opined that his Snapchat video file — the

_____

[6] As of November 18, 2021, the government had not produced the raw cellphone extraction data necessary to check the government's work. A319 n.3. Regardless, the court had no interest in evaluating the source or reliability of any of the images or video: "Whether the photos were taken a week or a decade ago, the mere presence of this evidence on

one turned into a visual image in the government's memorandum, *see* A58 — had been created on September 15, 2020. A463. He stated no additional allegations about how the video was created or edited and whether Mr. Mojica's phone or a real gun was involved. He did not address how the video had been edited to add the panda overlay (referenced in the district court's order, *see* AD27). The government made no reference to how and when it believed any of the hundreds of submitted digital images were created, how they came to be stored on Mr. Mojica's device, and whether he ever viewed them. A463.

Having just seen his advocacy and submission result in a 72-month sentence, the prosecutor asked for a 30-month consecutive sentence, a sentence that would result in an aggregate 102-month sentence plus six months' home detention. In doing so, the prosecutor described Mr. Mojica's 2013 offense and emphasized the reasons the court had stated in its upward-variance pronouncement. *See* A463-A465.

The court revoked Mr. Mojica's supervised-release term, and calculated the applicable revocation-guideline range. Since he was on sup-

---

Mojica's cellular phone establish that he has an affinity for firearms." AD40.

ervised release for a Class A felony and the violation was Grade A (*i.e.*, felony automatic-gun possession), the range was 24 to 30 months. A466.

The court sentenced Mr. Mojica to the maximum sentence of 60 months' imprisonment consecutive. A466; AD16. The court said it had considered the § 3553(a) factors, arguments from Mr. Mojica and the prosecutor, and "the seriousness of Mr. Mojica's violations." A467. The court stated that the supervised-release violations "reflect that he has no respect for the law, and that the original sentence did not serve the objective of punishment or deterrence." A467. Rather, the court pronounced that he "used his time to engage in new criminal conduct instead of performing pro-social activities that could have had a positive impact on his rehabilitation process." A467. The court imposed a 30-month supervised-release term to follow. AD17.

Mr. Mojica objected to the procedural and substantive reasonableness of the sentence. A468-A469. The prosecutor stood wordless.

This appeal follows.

## SUMMARY OF THE ARGUMENT

"[I]f it boils down to anything, it's that I'm a harsh judge or, as you say, I'm a harsh judge."

Hon. Francisco A. Besosa (Nov. 22, 2022, discussing the prospect of specific performance before another judge).

In exchange for a guilty plea to having two automatic-fire-capable handguns, the government agreed to recommend a within-guideline sentence between 37 and 46 months. Mr. Mojica had violated a supervised-release term for a 2013 § 924(c) offense and would be revoked and sentence for supervision violations. The government argued that Mr. Mojica was obsessed with drug-trafficking, firearms, and violent crimes based on undated, unverified images the prosecutor found while looking through a cellphone confiscated from Mr. Mojica. The government's sentencing memorandum used these images (plus a video) to describe aggravating factors in the case as exceptional while repeatedly linking Mr. Mojica's gun-possession crime to violent and murderous acts by others in Puerto Rico. The government's sentencing advocacy included arguments that had led to upward variances in similar cases.

When Mr. Mojica alleged breach, the government turned around and accused him of "tergiversating" in his own memorandum, where he

had made statements based on his and his family's own lived experience. A344-A345.

Any reasonable observer would understand the government's arguments and sentencing submission to seek a much higher sentence. The case should be reversed and remanded for resentencing before another judge. Alternatively, this court should order that the sentence be reduced as a remedy.

Setting the breach aside, the resulting sentence is procedurally and substantively unreasonable. The digital images and video are too unreliable to enhance Mr. Mojica's sentence. The sentencing rationales for a *Kimbrough* variance are unsupported. The sentence repeatedly relies on factors that are already incorporated in the guideline range without explaining why they deserve additional weight. The reasons for a more-than-11-year sentence do not add up.

ARGUMENTS AND AUTHORITY

## I. THE GOVERNMENT MATERIALLY BREACHED ITS PROMISE TO RECOMMEND A WITHIN-GUIDELINE SENTENCE.

### *Standard of Review*

When assessing whether the government breached a plea agreement, this Court's review is plenary. *See United States v. Clark*, 55 F.3d 9, 11 (1st Cir. 1995); *United States v. Canada*, 960 F.2d 263, 269 (1st Cir. 1992). Any disputed factual questions related to the agreement are reviewed for clear error. 55 F.3d at 11. Plea agreements are "essentially contracts." *Puckett v. United States*, 556 U.S. 129, 137 (2009).

But constitutional rights are implicated because the accused bargains their exercise away for the promised exercise of "the prestige of the government and its *potential* to influence the district court." *United States v. Vélez Carrero,* 77 F.3d 11, 12 (1st Cir. 1996). Prejudices therefore flows from the government's failure to perform, alleviating any need to show that the breach affected the ultimate sentence. *See Riggs*, 287 F.3d at 225; *Clark*, 55 F.3d at 13-14; *Canada*, 960 F.2d at 271. As such, courts do not engage in harmless-error analysis. "[A]utomatic reversal is warranted when objection to the Government's breach of a plea agree-

ment has been preserved." *Puckett*, 556 U.S. at 141 (citing *Santobello*, 404 U.S. at 261-62).

If a person impacted by government plea breach is content with the agreement and does not wish to go to trial, policy reasons preclude forced vacatur of their plea; such an option would let "the government to back out of its agreement at will and obtain a trial." *United States v. Kurkculer*, 918 F.2d 295, 302 (1st Cir. 1990). So breach generally must be remedied by specific performance through resentencing before another judge. *See Santobello,* 404 U.S. at 262.

The government's conduct here is largely undisputed. Mr. Mojica objected to the government inflammatory arguments, inflammatory submissions of undated, unverified digital images, and the government's hostility toward Mr. Mojica's sentencing advocacy. The question therefore is whether the government's conduct breached its promise to recommend a within-guideline sentence.

A.　**The government did not keep its promise to recommend a guideline sentence before a judge the government knew varies upward based on the types of argument and material the government submitted.**

This Court "hold[s] prosecutors engaging in plea bargaining to the most meticulous standards of both promise and performance." *United*

*States v. Riggs*, 287 F.3d 221, 224 (1st Cir. 2002) (citations and quotation marks omitted). This is because the government's fulfillment of plea-inducing promises is a necessary predicate to voluntary waiver of "almost all the constitutional rights" "deem[ed] fundamental." *Correale v. United States*, 479 F.2d 944, 947 (1st Cir. 1973); *Santobello*, 404 U.S. at 262 (1971).

Although district courts are free to reject the government's recommendation, when parties agree that the government will recommend a certain sentence, they do so with the understanding that it is likely the district court will accept the recommendation. *Vélez Carrero,* 77 F.3d at 11-12.

This Court's appellate review has no difficulty telling the difference between genuine, affirmative support for a stated sentence recommendation and substantive arguments that undermine and reduce the stated request to mere "lip service on a prosecutor's part." *United States v. Saxena*, 229 F.3d 1, 6 (1st Cir. 2000); *Canada*, 960 F.2d at 269. Although no "magic formula exists for a prosecutor to comply with the agreed-upon sentence recommendation," *United States v. Gonczy*, 357 F.3d 50, 54 (1st Cir. 2004), the prosecutor's "overall conduct must be reasonably consi-

stent with making such a recommendation, rather than the reverse."
*Canada*, 960 F.2d at 268 (citations omitted).

Nor is it a defense for the government to assert, as it did here, that it intended to seek a guideline sentence or only briefly made undermining arguments. *See* A343, A350 (claiming government "intended" to seek a within-guideline sentence); A339 (saying government only referenced "exceptional" danger and seriousness and "weapons of war" just once). This type of argument has been rejected. *Gonczy*, 357 F.3d at 52-54. The question is not about the mere stating of a number of months when "no fair reading of the prosecutor's argument to the court would lead an impartial observer to think that she thought a guideline sentence was an adequate sentence." *Id.* at 54 (cleaned up); *see also United States v. Cachucka*, 484 F.3d 1266, 1271 (10th Cir. 2007) (finding breach even though prosecutor did not repeat offending comments at second sentencing hearing); *United States v. Vaval*, 404 F.3d 144, 153 (2d Cir. 2005) (inadequate for government to say merely that it intended to abide by agreement).

Here, the initial recommendation for a low-end sentence was "undercut, if not eviscerated, by the AUSA's substantive argument to the

district court." *Gonczy*, 357 F.3d at 54. As discussed, the plea agreement provided that in exchange for Mr. Mojica's guilty plea to § 922(o) and foregoing his jury-trial rights,[7] the United States agreed to recommend a total offense level 19 and promised to request "a sentence of imprisonment within the applicable Guidelines range" once the court determined Mr. Mojica's criminal history category. A38-A39. The government further agreed that any recommendation for a "term of imprisonment below or above the stipulated sentence recommendation will constitute a material breach of the Plea Agreement." A39. The government therefore had a duty to recommend a sentence within the 37-and-46-months range.

The prosecutor, however, left the promised recommendation unfulfilled. The prosecutor affirmatively supported a higher sentence than that which the parties agreed the government would recommend. This is evident in the government's response to the PSR, the government's awareness of other cases before the same judge, the government's awareness of the court's view of the seriousness of the case, and the government's common and familiar use of similar tactics to seek, obtain, and

---

[7] This included his right to seek suppression of evidence obtained in violation of the Fourth Amendment. *See* A18-A33; A7 (DE-43-44).

defend upward variances in firearm-possession cases. It is also evident from the government's hostility toward Mr. Mojica's § 3553(a)(1) mitigation arguments based on his and his family's lived experience. And it is evident from the government's hearing the district court express the sentiment that Mr. Mojica's motion to compel performance was about nothing more than the judge being a harsh sentencer.

The sentencing prosecutor did not fulfill and seriously undercut the government's promise. If there is a speck of doubt after the sentencing hearing, the government gralloched it at the revocation hearing, where it made no effort to cure the breach. Rather, it insisted that the subject conduct was exceptional based on a prior offense from almost a decade earlier in 2013.

### 1. The government's sentence recommendation left no doubt that it constructively and zealously sought an upward variance.

In "the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (quoting *Rita v. United States,* 551 U.S. 338, 350 (2007)). By contrast, variant sentences are appropriate for cases that fall

"outside the 'heartland' to which the Commission intends individual Guidelines to apply." 551 U.S. at 350. Or where a given guideline range fails to properly reflect § 3553(a) considerations. *See Kimbrough*, 552 U.S. at 109. When facing a judge who regularly varies upward even for first-time automatic gun possession, the government relentless characterized the offense as one that is outside the "heartland," one involving demonstrated and sustained propensity for violent criminal acts.

The prosecutor's 255-page combined sentencing memorandum and attached images harnessed a parade of undated images the prosecutor had selected from a storage chip in Mr. Mojica's phone. A53-A306. A final page described a DVD exhibit submitted to the judge's chambers. A307. The government's submission advanced arguments previously used by the USAO-PR to seek upward variances. Providing a blueprint for the government here, in *United States v. Viloria-Sepúlveda*, 921 F.3d 5 (1st Cir. 2019), the government's sentencing memorandum:

> agreed with the PSR's calculations but argued for an upwardly variant sentence of forty-eight to sixty months based on the nature of the offense, the defendant's characteristics, and the need for deterrence and for protection of the public from future crimes by the defendant. It stressed that Viloria-Sepúlveda "was heavily armed with" a machine gun and "two extended magazines".... Further, the

> memorandum argued that the nature of the offense and the photographs on the defendant's cell phone showed that he was "an individual with a penchant for high-capacity firearms, drugs, and criminal activity."

> Finally, the government urged that the pervasiveness of guns and gun violence in Puerto Rico justified an upward variance to ensure adequate deterrence and to protect the public from future crimes by the defendant.

*Id.* at 7. Nor was *Viloria-Sepúlveda* an ancient relic. The government's memorandum and arguments recycled content the USAO-PR uses to imply that people in Puerto Rico have a higher propensity for violence and therefore should receive higher sentences. *See, e.g., United States v. Nieves-Díaz*, No. 20-cr-353-FAB, ECF No. 28, 10-12 (D.P.R. June 18, 2021); *United States v. Carmona-Alomar*, No. 20-309, ECF No. 30, 4-10 (D.P.R. Aug. 18, 2021).

The government's memorandum stressed that the prosecutor had personally searched digital images "on Defendant's cellphone." A58 n.1. As from the hundreds of images he pasted into the memorandum and exhibit, the prosecutor said he personally knew of more but was holding them back: "[I] identified several other videos on Defendant's cellphone that depict (1) unidentified and/or masked individuals either possessing,

displaying, and/or brandishing firearms or (2) substantial amounts of drugs packaged in bulk." A58 n.1. But "it [was] unclear" to the prosecutor if "Defendant appeared in the videos," so he had "not appended them…." A58 n.1.

The government's memo described for the court what he would see in hundreds of images: the "embrace [of] firearms, narcotics and violent criminal behavior." The material that followed is at A55-A57, A67-A99, A101-A149, A151-A214, A216-A261, A263-A306. Though the government did not claim Mr. Mojica was depicted in any of the images or had created them, the prosecutor inserted images of Mr. Mojica within the other images, his driver's license, A100, his voter-registration card, A150, a photo of a clean-shaven Mr. Mojica from an earlier time, A215. Embedded in the memorandum, the prosecutor placed two screenshots from an apparent Snapchat video where a person's head was partially covered by a cartoon panda face. A58. The prosecutor labeled this a "video from Defendant's phone in which an individual resembling Defendant is reck-lessly brandishing an assault-style rifle by repeatedly pointing the barrel at the individual who is recording the video." A58. Beside the screen-shots, in the margin, the prosecutor had placed a mugshot image of

Mr. Mojica, had typed his name above it, and placed a red arrow connecting the mugshot to partially exposed face in the image. In the other margin, the prosecutor had written "Assault-Style Rifle," and placed another arrow pointing at what the prosecutor thought was a gun. A58.

The government's thesis statement for this material was that "[t]he nature of the offense in this case goes beyond the simple possession of a machinegun." A60. The "images and video are additional evidence that Defendant has an interest in, *and likely participates in*, other criminal behavior beyond the machinegun count charged." A58 (emphasis added). The unmistakable, undeniable message was that this aggravation in this case was extraordinary, a case beyond simple possession. This was no ordinary possession — the prosecutor insisted — Mr. Mojica likely commits violent, weapons-of-war crimes. A58, A61, A65. And the prosecutor proposed that the offense was far worse in Puerto Rico, saying at the sentencing hearing Mr. Mojica was a "big part of the problem" of gun violence here. A401-A402. The question is not about the mere stating of a number of months when "no fair reading of the prosecutor's argument to the court would lead an impartial observer to think that []he thought a guideline sentence was an adequate sentence." *Gonczy*, 357 F.3d at 54 (cleaned up).

Whether the government undercuts a stated recommendation depends on context. The context in the subject court is that the judge regularly reaches the high-end or higher of a given guideline range.

Absent exceptional circumstances, therefore, the government should have little need to colorfully recount the details of the offense and Mr. Mojica's criminal history. *See, e.g.*, *United States v. Rivera-Berríos*, 968 F.3d 130 (1st Cir. 2020); *United States v. Díaz-Lugo*, 963 F.3d 145 (1st Cir. 2020); *United States v. García-Pérez*, F.4th 48, 54 (1st Cir. 2021); *United States v. Díaz-Díaz*, No. 19-1274, 2020 WL 12575067 (1st Cir. Aug. 21, 2021); *United States v. Flores-González*, 34 F.4th 103 (1st Cir. 2022), *reh'g en banc granted, opinion withdrawn* (1st Cir. Aug. 22, 2022); *United States v. Carmona-Alomar*, Nos. 21-1705, 21-1707 (appeal pending); *United States v. Nieves-Díaz*, Nos. 21-1519, 21-152 (appeal pending).

The "government's inflammatory discussion of [Mr. Mojica's] previous crimes served no practical purpose but to argue implicitly for a harsher punishment than the government had agreed to recommend. It also violated the government's express promise not to suggest in any way that the district court impose a sentence other than the stipulated one."

*United States v. Heredia*, 768 F.3d 1220, 1237 (9th Cir. 2014). "The government had no reason to call special attention to the ugliest aspects of [Mr. Mojica's] past to justify what is, in these circumstances, a routine recommendation." *Id.*

### 2. The government's attacks on mitigation advocacy further breached the plea agreement.

When confronted with its upward-variance-driving arguments, the government sought to undermine the defense's advocacy under 18 U.S.C. § 3553(a)(1). A344. The government disparaged and maligned Mr. Mojica's written advocacy as "filled with dramatic language, evasion of responsibility, and unsubstantiated allegations." A344.

Without evidence, the government suggested that Mr. Mojica was lying about his Catholic faith, about his family history (including his father's criminal background), and about the fact that substance-use disorder played a role in his possession of a prohibited type of firearm. A344-A345.

For the government, when Mr. Mojica argued from his and his family's lived experience, he was falsifying, misrepresenting, and willfully

perverting facts. A345.[8] He was, as the prosecutor put it, not just guilty of having guns that shoot illegally fast but also guilty of "tergiversation." A345. These attacks were obvious breaches under applicable contract law. *See United States v. Atwood*, 963 F.2d 476, 479 (1st Cir. 1992) (noting this Court guided in its interpretation by general principles of contract law). These principle include the "implied obligation of good faith and fair dealing." *United States v. Frazier*, 340 F.3d 5, 11 (1st Cir. 2003).

Starting with the government's 255-page sentencing submission through the revocation hearing, the government repeatedly used arguments, submissions, and tactics that evaded the spirit of the plea agreement, suggested a lack of diligence, and interfered with Mr. Mojica's own performance on the agreement. Instead, the prosecution threw the reputational weight of the United States behind a portrayal of Mr. Mojica as a dishonest tergiversator, A345, hiding behind "evasion of responsibility, and unsubstantiated allegations." A344. As Mr. Mojica argued, A356 n.1, the challenge to his recollection or acceptance of responsibility

---

[8] To our knowledge, before filing its written attack on Mr. Mojica's sentencing memorandum, the government made no attempt to seek clarification or corroboration from Mr. Mojica's counsel.

was unfounded. His acceptance of responsibility was unquestioned. *See* SA9-SA11 ¶¶19-21, 30-31; SA24 ¶90). And a person's own recollection regularly serves as the basis for sentencing courts' decisions.

### 3. The government continued to breach the plea agreement and make known its request for an upward variance during the revocation proceedings.

As mentioned, after the prosecutor secured the variance from 37-to-46 months up to 72 months plus 6 months' home detention, he sought a 30-month high-end revocation sentence. A463-A465.

First, although a specific revocation sentence was not specified in the plea, the government still had a duty not to undermine the plea agreement in the course of the revocation proceeding. Given the overlapping facts, a defendant would reasonably expect the government to seek a guideline sentence in the revocation as well in order to give value to the guideline § 922(o) recommendation. In doing so, the government necessarily endorsed a recommendation the plea agreement forbid. Had the AUSA sought a guidelines sentence in the § 922(o) case and the revocation matter, he had to have asked for a partially or fully concurrent sentence.

The 72 months accounted for all but four months of the high-end terms of 46 and 30 months. This request expressly made a "recommendation … for a term … above the stipulated sentence recommendation" and therefore "constituted a material breach …." A39.

Regardless, with the six months' home detention, the court's § 922(o) sentence exceeded a consecutive aggregate high-end term by four months.

Second, the government once again advocated at a tenor that had become unmistakably associated with upward-variance-seeking advocacy. The prosecutor's content had been, in the preceding hearing, directly imported into the court's skyrocketing-variance pronouncement. Anticipating the common issues between the § 922(o) sentence and the revocation, Mr. Mojica stated that he was reiterating the objections raised in the § 922(o) sentencing.

The prosecutor then revisited positions stated in the court's reasons for varying upward in the § 922(o) sentence. The language about special dangerousness of automatic guns had been front and center in the court's purported explanation. Where the government had recited Ninth Circuit dicta and 1986 congressional generalizations about automatic guns being

used in criminal enterprise to murder others and protect drugs, A65, the court's colloquy copied the government almost word for word. A408.

Where the government asked for greater punishment for Mr. Mojica as being a "big part of the problem" of gun violence in Puerto Rico, A401-A402, the court stated the guideline was especially inadequate in Puerto Rico. *See* A408. Where the prosecutor said Mr. Mojica likely commits violent, weapons-of-war crimes, A58, A61, A65, the court repeatedly spoke of murder and accidental killing while trying to commit murder. *See, e.g.*, A408.

Where the government argued that a Sentencing Commission firearms report supported a higher sentence, the court agreed nearly word for word. *See* A65; A410. Where the government spoke of an "exceptional" danger to the community, the court's exceptional upward variance was "to protect the community from additional offenses by this defendant." A61; A410. And when the government described Mr. Mojica's 2013 offense as involving two people possessing an arsenal (there were actually four codefendants), the court listed each item confiscated in great detail, calling the contraband by the same name, an arsenal. A60-A61; A411.

No fair reading of these arguments would lead an impartial observer to think that the government thought a guideline sentence was adequate here. *Gonczy*, 357 F.3d at 54.

### B. The breach was not cured or excused by the government's duty to present information.

A prosecutor, like any officer of the court, must answer candidly when the court has made a factual inquiry. But in an offense that involved no crime involving digital communication, and where the government agreed to recommend a guideline sentence, the government had no solemn obligation to comb through and submit undated images and video to allege that Mr. Mojica suffered from an unusually dangerous infatuation with firearms.

The government did not deny its sentencing memorandum's arguments and digital-content submissions were consistent with justifications it has used for years to advocate for and defend upward variances. Instead, it claimed its obligations to the court forced the government to submit these materials under *United States v. Almonte-Núñez*, 771 F.3d 84, 90 (1st Cir. 2014). Though no case remotely supports this view, the government imagined that *Almonte-Núñez*'s perspective on government responsibility somehow synergized with 18 U.S.C. § 3661's court-directed

rule on the scope of information courts can rely on. So, goes the argument, if § 3661 gave courts no limits on sources of information they consider, then the government had to search out all possible information for the court to consider when sentencing. A342.

Therefore, the government posited that all these materials — be they photographs of "firearms, controlled substances, [or] paraphernalia" — had to be submitted because they were "relevant to this Court's calculus in selecting a sentence within the Guidelines Range." A342.

The problem is that the government ultimately had no defense to the obvious fact that, with the subject judge, its cell-phone-scavenged photo and video collection would drive a sentence not "within the Guideline Range" but *beyond* the range.

And at every turn, the government sought no measures to temper either the PSR's handwaving toward an upward variance or its own substantive arguments that any reasonable practitioner in the district would understand as substantively seeking an upward variance.

### 1. No disclosure obligation had kicked in to invite the government's submission.

The main proposition in *Almonte-Núñez* was that there was no plain error where government "advis[ed] the court that the record con-

tained a factual basis for [an] adjustment" not contemplated in plea agreement. 771 F.3d at 89. The Court reasoned that "the AUSA was under an unflagging duty, as an officer of the court, to provide this accurate factual information to the sentencing judge *once the judge had raised the issue.*" *Id.* (emphasis added) (citing *v. Gonczy*, 357 F.3d at 53).

Here, no obligation was triggered. Most obviously, the court had not raised the issue. And nothing in the record even remotely suggests the court inquired whether any *Viloria-Sepúlveda*-type digital dump existed for use at sentencing. *See Viloria-Sepúlveda*, 921 F.3d at 7.

### 2. The government's unsolicited arguments and undated digital files were not mere information.

Though "the government has a duty to bring all facts relevant to sentencing to the judge's attention," this Court has repeatedly put the government on notice that the "duty coexists with the government's duty to abide by a plea agreement." *Gonczy*, 357 F.3d at 5. And this Court assesses the balance in honoring those duties under "the most meticulous standards of both promise and performance." *Id.* (quoting *Riggs*, 287 F.3d at 224 and citing *Santobello*, 404 U.S. at 261). In an opinion by Judge Torruella, *Gonczy* held that the government had not just provided information but had taken a stance that "can only be understood to have

emphasized Gonczy's wrongdoing and his leadership role in the offense, advocating for the imposition of a higher sentence than the agreed-upon term…." 357 F.3d at 53. The case of *United States v. Rodríguez-Delma*, 456 F.3d 1246 (10th Cir. 2006), captures the rule underlying *Gonczy*, where a prosecutor suffers from tension between their duty of candor and their duty to fulfill a plea-agreement promise: the government should provide it using "words [that] are factually accurate, legally neutral, and non-argumentative." *Id.* at 1251. In *Rodriguez-Delma*, moreover, the prosecutor's words were reliable: "They simply validated facts stated in the PSR." *Id.* (citation omitted). Here, by contrast, the prosecutor fracked the depths of a cell phone storage chip for unreliable materials beyond the PSR.

Worse still, the tenor of government's written submissions and arguments throughout the sentencing hearing and the revocation hearing were a stark departure from neutrality. At every step, the government depicted Mr. Mojica as a virtually irredeemable, unrepentant recidivist responsible for violent, weapons-of-war-involving crimes in Puerto Rico. And this was despite his never having been convicted or found responsible for any violent or abusive act. *See, e.g.*, SA11-SA14 ¶¶33-42. As

the government stated, "[t]he nature of the offense in this case goes beyond the simple possession of a machinegun." A60.

When there's some duty to disclose information that's adverse to the government's plea obligation, the government still must "achieve[] the correct balance between its duty of candor to the sentencing court and its duty to honor commitments under a plea agreement." *United States v. Malone*, 51 F.4th 1311, 1330 (11th Cir. 2022). This means "mak[ing] the necessary disclosures …, but nevertheless continu[ing] to advocate for the acceptance of the agreement." *Id.* (citations omitted). What the government cannot do, though, is act like the agreement doesn't exist and violate it, as it did here.

## C. The prosecutor's stated requests for a 46-month sentence did not cure breach or negate the probable impact of the prosecutor's substantive arguments and submission.

The government on appeal will likely repeat its citation to cases like *United States v. Ubiles-Rosario*, 867 F.3d 277 (1st Cir. 2017). *See* A319-A321, A345-A346. But *Ubiles*'s no-plain-error-in-an-unpreserved-breach-claim decision adds nothing. The government's view that *Ubiles* and *Cruz-Vázquez* shield a prosecutor from breach if they say the stipulated number of months out loud is foreclosed by the requirement that a pros-

ecutor cannot honor a recommendation promise if they pay it lip service only to undercut it. *Saxena*, 229 F.3d at 6; *Canada*, 960 F.2d at 269; *Gonczy*, 357 F.3d at 54. It's the entire context and the prosecutor's "overall conduct" that "must be reasonably consistent with making" the stipulated recommendation. *Canada*, 960 F.2d at 268.

And besides being non-precedent-setting no-plain-error resolutions, they differ starkly in context. In *Ubiles*, a carjacking sentencing, it was no stretch for the government to reference violent crime: the defendants had murdered their victim. In *United States v. Lessard*, 35 F.4th 37 (1st Cir. 2022), the prosecutor didn't breach the guideline-sentence-recommendation promise despite seeking a "big sentence" and focusing on aggravating factors. The low-end sentence was a hefty 135 months, and the prosecutor was responding commensurately to a request for a "downwardly variant sentence." *Id.* at 43. In contrast, the government's 255-page submission was not commensurate to any countervailing request. It only exacerbated a situation where the sentencing judge was already keen to vary upward and had been given reasons to do by Probation. *See supra* pp. 40-41; SA26 ¶¶100-101. Through lens of government-applicable "meticulous standards of both promise and performance" *Riggs*, 287

F.3d at 224, the government knew or should have known the probable outcome of its arguments based on sentencing and appellate litigation.

The court said early that it saw this case as more serious than a similar case resulting in a within-guideline sentence. A428-A429. When the government could have still attempted corrective action, the court acknowledged the perception that he was a "harsh sentencer." A422. And the government saw how the judge held up his own colossal upward variance in *United States v. Narváez-Soto*, 773 F.3d 282, 286 (1st Cir. 2014), as a basis for justifying the government's arguments about violent-crime propensity in Puerto Rico. AD32. Nor did the government attempt to temper the *Narváez-Soto* comparison by distinguishing the passive possession offense here from the violent-crime-focused upward variance there. And though the government's support for an upward variance was prolonged and unrelenting, even a fleeting focus on improper matters stands to leave a "lingering odor" before the court. *Cf. United States v. Meserve*, 271 F.3d 314, 327-28 (1st Cir. 2001) (groundless inquiry before jury may leave "lingering odor" affecting their adjudication).

Finally, after the court sentenced Mr. Mojica in the § 922(o) offense, the government affirmatively requested an additional 30-month sentence

on the top of the 72-months-plus-6-months-home-detention variance, thereby expressly affirming the request for the variant sentence.

Therefore, regardless of how many times the prosecutor asked for 46 months, the government's "overall conduct" was not "reasonably consistent with making [a guideline] recommendation…." *Canada*, 960 F.2d at 268; *Gonczy*, 357 F.3d at 54 (breach despite stated within-guideline request).

### D.    The breach here is so egregious that this Court should order reduced sentences in both matters.

Generally, the remedy for government plea breach is resentencing before a different judge. *See Santobello*, 404 U.S. at 262. This Court has broad discretion to "shape a remand as circumstances warrant." *United States v. Marrero-Pérez*, 914 F.3d 20, 25 (1st Cir. 2019). An appropriate plea-breach remedy should serve the "interests of justice" and show "appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty." *Santobello*, 404 U.S. at 262-63.

Faced with an egregious government breach in *United States v. Dicus*, the district court reduced the defendant's sentence to the low end of his guideline range even though the court was otherwise planning to

sentence him to the higher end absent the breach. 579 F. Supp. 2d 1142, 1158 (N.D. Iowa 2008). This remedy was appropriate "because it is likely to have a deterrent effect on prosecutorial misconduct, to provide an incentive to defendants to raise misconduct claims, and to serve other salutary goals." *Id.*; *see also id.* n.5 (citing S. Starr, *Sentence Reduction as a Remedy for Prosecutorial Misconduct*, 97 Geo. L. J. 1509, 1511 (2009) ("Sentence reduction is an accepted remedy in a number of other jurisdictions for various violations of criminal defendants' rights.")).

As trial counsel argued, the government failed at observing core requirements of "transparency and honesty in sentencing" and consideration of the "probable outcome of the prosecution in terms of the sentence … in the event that a plea agreement is reached." A359 (citation omitted). The government also failed to "apply relevant sentencing factors to the facts in a way that most accurately and convincingly supports the government's recommend[ation]…." A359 (citation omitted). Honoring a promise on behalf of the United States is of paramount importance. After all, the prosecution "is the representative not of an ordinary party …, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a

criminal prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States*, 295 U.S. 78, 88 (1935). It remained undisputed below, based on similar government sentencing submissions resulting in double-the-guidelines sentences, that the "probable outcome" was an upward variance based on the government's advocacy, submissions, Puerto Rico-violent-propensity notions, and exceptional-dangerousness arguments. A359-A360. The judge showed this to be true.

The prosecution's argument that "that it honored its promises reeks of the lamp," *United States v. Villa-Vázquez*, 536 F.3d 1189, 1197 (10th Cir. 2008), when its core thesis was that the danger and seriousness of this simple possession offense "'should be considered exceptional.'" A324.

Characterizing an offense and a defendant far outside the heartland is seeking a sentence beyond the heartland-directed guideline range. "[W]hile [the prosecutor] may strike hard blows, he is not at liberty to strike foul ones." *Berger*, 295 U.S. at 88. The court should order that both of Mr. Mojica's sentences be reduced to lower end of the applicable range and run concurrently. *See* 28 U.S.C. § 2106.

### E.    The revocation sentence should be reversed.

A review of the record reveals that the basic factors driving the § 922(o) sentence drove the revocation variance. *See* A406-A412; A465-A468. Had the government honored its promise, the revocation would have begun without the commitment by the judge to a conclusion that Mr. Mojica was somehow linked to violent crime and drug trafficking. Both sentences involved the same operative facts and the court applied the same § 3553(a) factors that the government improperly argued were extraordinarily serious in the § 922(o) offense.

As mentioned, Mr. Mojica reasonably expected the government to seek a guideline sentence in the revocation as well in order to give value to the guideline § 922(o) recommendation. *See supra* pp. 43-46. While not expressly written in the plea agreement, Mr. Mojica's waiver of his trial rights necessarily waived a substantial part of his right to a final revocation hearing. As such, since prosecutors are held to exacting standards of promise and performance. *Riggs*, 287 F.3d at 224, the agreement logically contemplates a guideline recommendation in the revocation, or, at a minimum, a recommendation that does not undercut the § 922(o) sen-

tence recommendation. Therefore, the revocation sentence should be re-versed as well.

## II. THE COURT'S EXTREME UPWARD VARIANCES ARE PROCEDURALLY AND SUBSTANTIVELY INFIRM.

### A. The Court's sentence — based on unreliable evidence and outside-the-record assertions — is procedurally unreasonable.

#### *Standard of Review*

This Court "typically review[s] the reasonableness of a criminal sentence under the abuse-of-discretion standard." *United States v. Ramos-Carreras*, 55 F.4th 51, 55 (1st Cir. 2022) (citations omitted); *Gall v. United States*, 552 U.S. 38, 51 (2007). "[A] convicted defendant has the right to be sentenced on the basis of accurate and reliable information, and that implicit in this right is the opportunity to rebut the … evidence and the information to be considered by the court.'" *Ramos-Carreras*, 55 F.4th at 55-56 (citation and quotation marks omitted). A sentence affected by unreliable evidence and outside-the-record evidence makes for a procedurally unreasonable sentence. *Id*. Mr. Mojica relentlessly objected to reliance on the government's unreliable submissions. A51-A52, A323-A337, A352-A366.

Mr. Mojica objected regarding the procedural errors raised here, *see* Fed. R. Crim. P. 51(b), arguing first that "the Court relied on information that … was unreliable." A416. Where the court had, for the first time without briefing or evidence stated it was varying under *Kimbrough*, Mr. Mojica argued that reliance on *Kimbrough* "was misplaced in this case[]"; "no information" was "presented to the [c]ourt" that was "reliable enough." A416. Without explanation, the court denied the objections. The government stood silently. The record does not show the government submitting any of the *Kimbrough* ideas to the court.

### 1. Both sentences suffered from reliance on the government's digital-image-and-video submissions.

The prosecution argued its digital-file submission made a number of factors aggravating, including "the nature of the offense, the characteristics of the Defendant, and the need to afford adequate deterrence…." A53. The government told the court these images were just "a very small sample of Defendant's apparent infatuation with firearms." A55. The government therefore urged that Mr. Mojica's history was of a person who "apparently continued to embrace firearms, narcotics, and violent criminal behavior." A55; *see also* A56 (calling files "substantial evidence of drug trafficking"). The government referred to these "images and

video" as "additional evidence that Defendant has an interest in, *and likely participates in*, other criminal behavior beyond the machinegun" possession. A58 (emphasis added).

Mr. Mojica's criminal history shows unlawful gun possession on just two calendar dates in his adult life, but the government's position aimed to persuade the court he "has an affinity for high-capacity firearms *and* prefers to be heavily armed" even "in a public place" and while "on federal supervised release for" a gun offense. A60.

The court could not have relied on uncorroborated arrest records or other types of allegations of unproved conduct to say the same about Mr. Mojica's criminal propensity and history. It cannot do that with the submissions here. Courts may not vary based on unreliable evidence. *United States v. Rivera-Ruiz*, 43 F.4th 172, 182-83, 185 (1st Cir. 2022). And findings based solely on unreliable evidence cannot meet the preponderance-of-the-evidence standard. Like the complaints looked at in *Rivera-Ruiz* and *United States v. Colón-Maldonado*, 953 F.3d 1, 2 (1st Cir. 2020), wrongdoing based on stored images could support "analysis of [Mr. Mojica's] history and characteristics if the underlying misconduct more likely than not took place." 43 F.4th at 183.

Yet, undisputedly the digital images offered to suppose the position that he embraced "firearms, narcotics, and violent criminal behavior," A55, was never corroborated in any way. The government failed to establish even a single axis of reliability as to what the images depicted, who the images depicted, and what, if any, use Mr. Mojica derived from them. *See* AD40.

The court did not care whether the images were created "a week or a decade ago" before Mr. Mojica suffered his first conviction. *See* AD40. Undisputedly, the government offered no proof the submitted images legitimately depicted any contraband. A342. It didn't test any alleged contraband; it offered no evidence any depicted item was ever possessed by Mr. Mojica. A342-A343. The government did not even stand by the video file with someone "'resembling' Defendant." A346. It lacked dates, places, and context; its files were "serv[ing] as a proxy for criminal culpability or the likelihood of recidivism," which they may not do. *Rivera-Ruiz*, 43 F.4th at 183 (quotation marks omitted) (quoting *Marrero-Pérez*, 914 F.3d at 23). Such uncorroborated images were overwhelmingly unreliable. *See United States v. Carrión-Meléndez*, 26 F.4th 508, 514 (1st Cir. 2022).

A court reversibly errs unless the error was harmless such that the court's reliance "'did not affect the … selection of the sentence imposed.'" *Rivera-Ruiz*, 43 F.4th at 185 (quoting *United States v. Castillo-Torres*, 8 F.4th 68, 73 (1st Cir. 2021). The court's use of these materials was harmful. First, the court affirmatively adopted the government's submission, *see* AD20-AD40, with no reservation. Second, the record reveals that the court adopted the position that the digital files show Mr. Mojica to be associated with violent crime in Puerto Rico, exceptional danger, and nearly certain recidivism. These files were the glue the government used to convince the court to conclude that his nonviolent possession was linked to a Puerto Rico-population-infecting "disease" of "armed violent crime" of murder. A401; A61; A408; AD38, AD40.

### 2. The sentence is procedurally unreasonable for its basing a purported *Kimbrough* variance on undisclosed, unreliable, and outside-the-record factual assertions.

When it pronounced the upwardly variant sentence, the court said it was varying upward for factual reasons under *Kimbrough*. A408. These appear to be based on outside-the-record material and analysis related to the physics of firearm discharge and manufacturing differences between lawful machine guns. *See supra* p. 21.

The court and the government expressed an unsupported shared hypothesis about altered handgun recoil. It is unreasonable because it appears to have been arrived at outside the Rule 32 fact-settling process and its consideration renders the sentence procedurally unreasonable.

After the Rule 32 fact-settling process was finished and the parties had allocuted, the court announced, for the first time, that it disagreed with the guideline based on an empirical hypothesis added to the court's sentencing wording. A408-A409. The assertion was that pistols modified to be fully automatic "present dangers additional to those raised by manufactured machine guns" because they are "difficult, if not impossible, to control due to their recoil or kickback." A409. The court further hypothesized that such a "recoil" posed a special danger for someone attempting to murder another person by causing the "weapon to change its direction, which then would harm "people near the shooter's intended target in great danger." A409. The court adds that without manufactured features to limit recoil, an untrained shooter "risks spraying a large amount of bullets helter-skelter, especially from a fully-loaded high-capacity magazine like the ones Defendant possessed." A409. In the revocation hearing, the government appears to endorse the recoil-makes-

public-murder-more-dangerous-to-bystanders, stating: "Machine guns fire a tremendous number of rounds in the blink of an eye, and such power means *there is very little control*." A464 (emphasis added).

The problem with the court's fact-intensive conclusion is that it is unsupported by anything in the record. While Mr. Mojica admitted the elements of § 922(o), there is no record of the firearm ever being fired, let alone being fired at a person with the intent to kill them. If the court intended any of its wording to be considered as factual finding rather than rhetorical flourishes, the record would have needed to establish these facts. It did not. After all, courts are presumed to know the applicable law when entering rulings, and factual development at sentencing must be arrived at through either the presentence investigation or presentation by the parties. *See* Fed. R. Crim. P. 32(d)(1), (d)(2), (i)(1)-(i)(3). As Judge Torruella observed: "the purpose of Rule 32 was to promote "focused, adversarial resolution of the legal and factual issues.'" *United States v. Vega-Santiago*, 519 F.3d 1, 7 (1st Cir. 2008) (en banc) (reserving and dissenting for reasons unrelated to this proposition) (citing *Burns v. United States*, 501 U.S. 129, 137 (1991)).

The court's vivid allegations of the potential for uncontrolled reckless fire stood at the forefront of its mind when pronouncing the variant sentence. *See Ramos-Carreras*, 55 F.4th at 57-58. "Reciting extraneous non-record avowals without identifying the source or providing notice to [Mr. Mojica] that these asserted details would be considered in determining his sentence for the condition at issue was … error." *Id.* at 57 (footnote and citation omitted).[9]

The court further expressed that the guideline range does not account for the amount of ammunition or high-capacity magazines. A409-A410. The court posited that this Court held that large ammunition quantities *may* warrant a variance for their being left out of the guideline and because the contribute to the "lethalness" of a gun. This Court, however, has held similar quantities consistent with simple machine-gun possession. *See Rivera-Berríos*, 968 F.3d at 135 (characterizing similar "amount of ammunition [as] entirely consistent with simple possession of a machine gun" since there "was no large cache of ammunition."). Mr.

---

[9] In *Ramos-Carreras*, the Court reviewed for plain error and found it. So even if this court were to review under plain error, reversal is warranted here as well.

Mojica had no notice the court was considering minute technical manufacturing details affecting the application of the laws of physics were the subject guns fired in a busy public place. Therefore, the purported explanation relying on unfound gun characteristics and ammunition was unsupported and misplaced as a *Kimbrough* variance.

**B.    In addition to the court's procedural errors, Mr. Mojica's disparate sentence is substantively unreasonable because the record does not justify the 132-month plus 6 months' home detention sentence.**

Abuse-of-discretion review applies to substantive-reasonableness errors so long as a defendant advocates for a particular sentence. *Holguín-Hernández v. United States*, 140 S. Ct. 762, 767 (2020). Inadequate explanations can be understood as either procedural errors or substantive-unreasonableness challenges. *United States v. Crespo-Ríos*, 787 F.3d 34, 37 n.3 (1st Cir. 2015).

District courts that vary in sentencing must offer justifications that are proportionate to the extent of variance. *See, e.g.*, *United States v. Tanco-Pizarro*, 892 F.3d 472, 484 (1st Cir. 2018). If a court "decides that an outside-Guidelines sentence is warranted, [it] must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *See Gall*, 552 U.S. at

50. Thus, "a major departure should be supported by a more significant justification than a minor one." *Id.* If variance-justifying circumstances aren't readily apparent, and "a sentencing court relies on a factor already accounted for by the sentencing guidelines to impose a variant sentence, it must indicate what makes that factor worthy of extra weight." *Rivera-Berríos*, 968 F.3d at 136 (cleaned up); *see United States v. Zapete-García*, 447 F.3d 57, 60 (1st Cir. 2006). The district court's reasons for a sentence must add up to a plausible rationale and must justify a variance of the magnitude in question. *See United States v. Jiménez-Beltre*, 440 F.3d 514, 519 (1st Cir. 2006). And the court's words must "reflect a correct understanding of the law, the facts, and the state of proceedings." *United States v. Soto-Soto*, 855 F.3d 445, 449 (1st Cir. 2017) (citation omitted).

The court's aggregate 132-month sentence, plus six months' home detention, is an extreme, *unsupported* variance from the 37-to-46 range. It is "greater than necessary" to "comply with purposes" of the Sentencing Reform Act. 18 U.S.C. § 3553(a)(1). It must be reversed. *Cf. Crespo-Ríos*, 787 F.3d at 38 (72-month variance was "extreme"); *United States v. Fernández-Garay*, 788 F.3d 1, 6 (1st Cir. 2015) (double-the-GSR sentence "sharp[]," "significant" variance). At the government's request, the court

continuously focused on murderous and violent actions and a complete and "total disregard for the law." A408. But nothing link Mr. Mojica and asserted crimes by others. He committed an illegal public-order offense while having two guns that are illegal if unlicensed. *See supra* p. 5, n.3.

While Mr. Mojica has never denied guilt for both of these felony convictions, he had still reached 29 years old with no history of violence, he had been living in the community for over two years without issues or violations, he had a stable relationship with his partner, and healthy, supportive family relationships. He was certainly not an irredeemable recidivist deserving a sentence that dwarfs any average or typical defendant's sentence. Yet, the district court's § 922(o) pronouncement ultimately varied up to 72 months. And the revocation sentence of 60 months is 200-percent greater than an already elevated 24-to-30-month range. The applicable factors here do not reflect an "individualized assessment based on the facts presented." *Gall*, 552 U.S. at 49.

## 1. The court failed to explain any basis to give extra weight to factors already elevating the guideline range.

The court's upward variance failed to explain why excessive weight for recidivating and a breach of trust was warranted for both the § 922(o)

sentence and the revocation. *See Rivera-Berríos*, 968 F.3d at 136; *Zapete-García*, 447 F.3d at 60. When the presentence report suggested a possible variance based on the supervised-release violation and the lack of verifiable employment or community service, SA26 ¶¶100-101, Mr. Mojica objected and renewed his objection at sentencing. A51-A52. Mr. Mojica noted that the PSR's proposed bases to vary "were part of the base offense level and specific offense characteristics and [Mr. Mojica's] criminal history score…." A394-A395.

The revocation proceeding, for suffering a Grade A violation while supervised for a Class A felony, garnered a separate 24-to-30-revocation sentence. It alone elevated Mr. Mojica's CHC to III and elevated his base offense level to 22, adding years of imprisonment to his guideline ranges. Yet, the court still varied skyward without explaining why extra weight was warranted.

### 2. The court improperly considered, and gave excessive weight to, the notion that the simple possession offense had any link to other persons' violent crime in Puerto Rico.

The unfounded focus on Mr. Mojica's being part of the Puerto Rico community exacerbates the unreasonableness of the sentence. The Sentencing Reform Act aimed to dispense with inequalities based on

localized sentencing responses. *United States v. Aguilar-Peña*, 887 F.2d 347, 352 (1st Cir. 1989); 28 U.S.C. § 991(b)(1)(B). While this Court has permitted some mention of community gun-tragedy tallies, such reference cannot dominate the sentence and must apply "'in case-specific terms.'" *United States v. Ortiz-Rodríguez*, 789 F.3d 15, 19 (1st Cir. 2015) (citation omitted).

The court's path to case-specific terms were was via unverified files taken off a cellphone. This unreliable evidence offers no acceptable basis for fueling the court's sentence. Punishments must "fit the offender and not merely the crime." *Pepper v. United States*, 562 U.S. 476, 488 (2011). But here the court's punishment veered off into a realm of speculation, duplicative sentence increases, and implausible sentencing rationales unsupported by the record and not before the court.

While there is a "universe" of reasonable sentences, a court cannot rely on reasons for its sentence based on facts outside the universe of a given case. They must come from reliable facts in the record. Or else, as here, reversal is warranted.

CONCLUSION

This Court should reverse the sentence and remand for resentencing before a different judge. Alternatively, the sentence should be ordered reduced as discussed in Section I.

RESPECTFULLY SUBMITTED.

ERIC ALEXANDER VOS
Federal Public Defender
District of Puerto Rico

FRANCO L. PÉREZ-REDONDO
Assistant Federal Public Defender
Supervisor, Appeals Division

s/KEVIN E. LERMAN
Research & Writing Attorney
First Circuit Bar No. 1194361
241 F.D. Roosevelt Ave.
San Juan, PR 00918
(787) 281-4922
Kevin_Lerman@fd.org

## CERTIFICATE OF COMPLIANCE

**1.** This brief contains **12,791 words** (excluding the brief components exempted by Rule 32(f). It complies with Rule 32(a)(7)(B)'s 13,000-word limit for principal briefs.

**2.** This brief uses proportionally spaced typeface, 14-point Century Schoolbook font. It complies with typeface and type style requirements of Rule 32 (a)(5)-(6).

January 4, 2023

**s/KEVIN E. LERMAN**
Research & Writing Attorney

## CERTIFICATE OF SERVICE

**CERTIFICATION:** I ECF-filed this Brief, notifying the parties, including government counsel.

January 4, 2022

**s/KEVIN E. LERMAN**
Research & Writing Attorney

Nos. 22-1204, 22-1205

# In the United States Court of Appeals for the First Circuit

———————————

**UNITED STATES OF AMERICA,**
*Appellee,*

v.

**YAVIER MOJICA-RAMOS,**
*Defendant-Appellant*

———————————

On Appeal from the United States District Court
for the District of Puerto Rico
Case Nos. 13-cr-840-FAB, 20-cr-374-FAB
Hon. Francisco A. Besosa, U.S. District Judge

———————————————————————————

**ADDENDUM TO APPELLANT'S OPENING BRIEF**

———————————————————————————

**ERIC ALEXANDER VOS**
Federal Public Defender
District of Puerto Rico
241 F.D. Roosevelt Ave.
San Juan, PR 00918
T. (787) 281-4922
F. (787) 281-4899
E. Kevin_Lerman@fd.org

**FRANCO L. PÉREZ-REDONDO**
Assistant Federal Public Defender
Supervisor, Appeals Division

**KEVIN E. LERMAN**
Research & Writing Attorney

*Attorneys for Defendant-Appellant
Yavier Mojica-Ramos*

# INDEX

JUDGMENT IN 20-374 (FAB),
  DOCKET ENTRY NO. 82 .......................................................................... 1-7

JUDGMENT FOR REVOCATION IN 13-840-4 (FAB),
  DOCKET ENTRY NO. 186 ...................................................................... 8-13

AMENDED JUDGMENT FOR REVOCATION IN 13-840-4 (FAB),
  DOCKET ENTRY NO. 187 .................................................................... 14-19

OPINION AND ORDER IN 20-374 (FAB),
  DOCKET ENTRY NO. 77 ...................................................................... 20-33

MEMORANDUM AND ORDER IN 20-374 (FAB),
  DOCKET ENTRY NO. 80 ...................................................................... 34-40

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

District of Puerto Rico

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| v. | |
| Yavier MOJICA-RAMOS | Case Number:  3:20-CR-0374-01 (FAB) |
| | USM Number:  43050-069 |
| | AFPD Carlos A. Vazquez-Alvarez, Esq. |
| | Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)    Two (2) on August 5, 2021.

☐ pleaded nolo contendere to count(s)
   which was accepted by the court.

☐ was found guilty on count(s)
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC § 922(o) and 18 USC § 924(a)(2) | Illegal Possession of a Machinegun. | 10/23/2020 | Two (2) |

The defendant is sentenced as provided in pages 2 through ___7___ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☑ Count(s)    One (1)    ☑ is   ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

2/28/2022
Date of Imposition of Judgment

/S/ FRANCISCO A. BESOSA
Signature of Judge

FRANCISCO A. BESOSA, U.S. DISTRICT JUDGE
Name and Title of Judge

2/28/2022
Date

Add. 1

AO 245B (Rev. 09/19) Judgment in Criminal Case
Sheet 2 — Imprisonment

Judgment — Page  2  of  7

DEFENDANT:   Yavier MOJICA-RAMOS
CASE NUMBER:   3:20-CR-0374-01 (FAB)

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
Seventy-two (72) months.

☑ The court makes the following recommendations to the Bureau of Prisons:
  --That defendant be designated to Danbury to serve the term of imprisonment.
  --That defendant be allowed to participate in vocational training courses, English as second language courses and the 500 hours for drug/alcohol treatment if he qualifies.

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

  ☐ at _____ ☐ a.m. ☐ p.m.  on _____ .

  ☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

  ☐ before 2 p.m. on _____ .

  ☐ as notified by the United States Marshal.

  ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

Add. 2

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 3 — Supervised Release

Judgment—Page    3    of    7

DEFENDANT:    Yavier MOJICA-RAMOS
CASE NUMBER:    3:20-CR-0374-01 (FAB)

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of:

Three (3) years under the following mandatory, standard, and Special/Additional Conditions of Supervision.

## MANDATORY CONDITIONS

1.  You must not commit another federal, state or local crime.
2.  You must not unlawfully possess a controlled substance.
3.  You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
    ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.  ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.  ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.  ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq*.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.  ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

Add. 3

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 3A — Supervised Release

| | | | | |
|---|---|---|---|---|
| | Judgment—Page | 4 | of | 7 |

DEFENDANT:  Yavier MOJICA-RAMOS
CASE NUMBER:  3:20-CR-0374-01 (FAB)

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision.  These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so.  If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity.  If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10.  You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11.  You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12.  If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction.  The probation officer may contact the person and confirm that you have notified the person about the risk.
13.  You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____    Date _____

Add. 4

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 3B — Supervised Release

Judgment—Page   5   of   7

DEFENDANT:  Yavier MOJICA-RAMOS
CASE NUMBER:  3:20-CR-0374-01 (FAB)

# ADDITIONAL SUPERVISED RELEASE TERMS

1. He shall observe the standard conditions of supervised release recommended by the United States Sentencing Commission and adopted by this Court.

2. He shall participate in transitional and reentry support services, including cognitive behavioral treatment services, under the guidance and supervision of the Probation Officer. Mr. Mojica shall remain in the services until he is discharged by the service provider,  with the approval of the Probation Officer.

3. He shall participate in a program or course of study aimed at improving his educational level and shall complete a vocational training program. Mr. Mojica  shall participate in a job placement program recommended by the Probation Officer.

4. He shall cooperate in the collection of a DNA sample, as directed by the Probation Officer, pursuant to the Revised DNA Collection Requirements, and Title 18, U.S. Code Section 3563(a)(9).

5. He shall provide the U.S. Probation Officer access to any financial information upon request.

6. He shall participate in an approved substance abuse monitoring program to determine if treatment is necessary. He shall refrain from the unlawful use and possession of controlled substances and shall submit to a drug testing, not less than three (3) samples during the supervision period, but not more than 104 samples each year, in accordance with the Drug Aftercare Program Policy of the United States Probation Office as has been approved by this Court. If the illegal use of controlled substances is detected in any sample, Mr. Mojica shall participate in an inpatient or an outpatient substance abuse treatment program, for evaluation or treatment, as arranged by the Probation Officer; payment shall be based on his ability to pay or the availability of payments by third parties, as approved by the Court.

7. He shall cooperate with child support enforcement authorities and pay child support as required by Law.

8. He shall be placed in the location restriction program with electronic monitoring device  for a period of 6 months and shall remain in his home during prescribed times in accordance and under the modality of  Home Detention. Mr. Mojica is  restricted to his residence at all times, except for employment, education, religious services, medical, substance abuse, or mental health treatment, attorney visits, court appearances, court-ordered obligations, or other activities approved in advance by the Probation Officer. Different location monitoring technologies are available and may become available under this program during the term of Supervision, those are to be selected by the Probation Officer in adherence to broad operational considerations for purposes of behavior mitigating offender risks, providing supervision structure, and detecting various patterns of. Mr. Mojica shall pay for the electronic monitoring equipment at the prevailing rate in effect during the term of monitoring or in accordance with his ability to pay. Mr. Mojica shall sign the Location Monitoring Program Agreement, and abide by it, which will include, but will not be limited to, all technology and supervision requirements, responsibility towards damage to the equipment, and for the costs of participation in the program, as directed. The defendant shall refrain from obstructing, or attempting to obstruct, or tamper in any fashion, with the efficiency and accuracy of any technology which is required by this condition of supervision. Different technologies are available and/or may become available in this program during the term of supervision.

Add. 5

AO 245B (Rev. 09/19)   Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

Judgment — Page   6   of   7

DEFENDANT: Yavier MOJICA-RAMOS
CASE NUMBER: 3:20-CR-0374-01 (FAB)

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| | | | |

| **TOTALS** | $ 0.00 | $ 0.00 | |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the   ☐ fine   ☐ restitution.

☐ the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

\* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
\*\* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
\*\*\* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

Add. 6

AO 245B (Rev. 09/19)    Judgment in a Criminal Case
Sheet 6 — Schedule of Payments

Judgment — Page __7__ of __7__

DEFENDANT:  Yavier MOJICA-RAMOS
CASE NUMBER:   3:20-CR-0374-01 (FAB)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A**  ☑  Lump sum payment of $ __100.00__ due immediately, balance due

☐  not later than _____ , or
☐  in accordance with  ☐ C,  ☐ D,  ☐ E, or  ☐ F below; or

**B**  ☐  Payment to begin immediately (may be combined with  ☐ C,  ☐ D, or  ☐ F below); or

**C**  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D**  ☐  Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

**E**  ☐  Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment.  The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F**  ☐  Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment.  All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐  Joint and Several

| Case Number<br>Defendant and Co-Defendant Names<br>*(including defendant number)* | Total Amount | Joint and Several<br>Amount | Corresponding Payee,<br>if appropriate |
|---|---|---|---|
| | | | |

☐  The defendant shall pay the cost of prosecution.

☐  The defendant shall pay the following court cost(s):

☑  The defendant shall forfeit the defendant's interest in the following property to the United States:
one Glock pistol, Model 26, 9mm caliber, bearing serial number MPKI 71; one Glock pistol, Model 22, .40 caliber, bearing serial number BGZ323US; 43 rounds of 9mm caliber ammunition; and 19 rounds of .40 caliber ammunition; and one 31-round capacity extended 9mm caliber magazine. All pursuant to 18 U.S.C. § 924(d)(l) and 28 U.S.C. § 2461(c).as depicted in paragraph 23 of the plea and forfeiture agreement.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

Add. 7

AO 245D (Rev. 09/19)   Judgment in a Criminal Case for Revocations
Sheet 1

# UNITED STATES DISTRICT COURT

District of Puerto Rico

UNITED STATES OF AMERICA

v.

Yavier MOJICA-RAMOS

)
) **JUDGMENT IN A CRIMINAL CASE**
) (For **Revocation** of Probation or Supervised Release)
)
)
) Case No.    3:13-CR-0840-04 (FAB)
) USM No.    43050-069
)
)   AFPD Carlos A. Vazquez-Alvarez, Esq.
)                        Defendant's Attorney

## THE DEFENDANT:

☑ admitted guilt to violation of condition(s)    __5 conditions__    of the term of supervision.

☐ was found in violation of condition(s) count(s) _____ after denial of guilt.

The defendant is adjudicated guilty of these violations:

| Violation Number | Nature of Violation | Violation Ended |
|---|---|---|
| Mandatory Condition | The defendant was charged in Cr. 20-374-01 FAB. | 10/23/2020 |
| Mandatory Condition | The defendant illegally possessed illegal firearms and ammunitions. | 10/23/2020 |
| Mandatory Condition | The defendant tested positive for illegal substances. | 05/27/2020 |
| Standard Condition 7 | The defendant possessed illegal substances. | 05/27/2020 |

The defendant is sentenced as provided in pages 2 through __6__ of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has not violated condition(s) _____ and is discharged as to such violation(s) condition.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

02/28/2022
Date of Imposition of Judgment

/S/ Francisco A. Besosa
Signature of Judge

Francisco A. Besosa, U.S. District Judge
Name and Title of Judge

02/28/2022
Date

Add. 8

AO 245D (Rev. 09/19)    Judgment in a Criminal Case for Revocations
Sheet 1A

Judgment—Page __2__ of __6__

DEFENDANT:  Yavier MOJICA-RAMOS
CASE NUMBER:  3:13-CR-0840-04 (FAB)

## ADDITIONAL VIOLATIONS

| Violation Number | Nature of Violation | Violation Concluded |
|---|---|---|
| Special Condition 5 | The defendant failed to report to a scheduled drug testing. | 10/11/2020 |

Add. 9

AO 245D (Rev. 09/19)   Judgment in a Criminal Case for Revocations
Sheet 2— Imprisonment

Judgment — Page    3    of    6

DEFENDANT:  Yavier MOJICA-RAMOS
CASE NUMBER:  3:13-CR-0840-04 (FAB)

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of :

Thirty (30) months to be served consecutively with the term of Seventy-Two (72) months imposed in Cr. 20-374-01 (FAB).

☑   The court makes the following recommendations to the Bureau of Prisons:

--That defendant be designated to Danbury to serve the term of imprisonment.
--That defendant be allowed to participate in vocational training courses, English as second language courses and the 500 hours for drug/alcohol treatment if he qualifies.

☑   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:

☐   at _____ ☐ a.m. ☐ p.m.   on _____ .

☐   as notified by the United States Marshal.

☐   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐   before 2 p.m. on _____ .

☐   as notified by the United States Marshal.

☐   as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____   to _____

at _____ with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

Add. 10

AO 245D (Rev. 09/19)    Judgment in a Criminal Case for Revocations
Sheet 3 — Supervised Release

Judgment—Page  <u>4</u>  of  <u>6</u>

DEFENDANT:  Yavier MOJICA-RAMOS
CASE NUMBER:  3:13-CR-0840-04 (FAB)

## SUPERVISED RELEASE

The defendant will continue under supervised release:

Thirty (30) months under the same conditions originally imposed on him, to be served concurrently with the supervised release term, and same conditions imposed in Cr. 20-374-01 (FAB) and the following terms and conditions.

## MANDATORY CONDITIONS

1.   You must not commit another federal, state or local crime.
2.   You must not unlawfully possess a controlled substance.
3.   You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
          ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.   ☐  You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.   ☑  You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.   ☐  You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.   ☐  You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

Add. 11

AO 245D (Rev. 09/19)   Judgment in a Criminal Case for Revocations
Sheet 3A — Supervised Release

Judgment—Page __5__ of __6__

DEFENDANT:   Yavier MOJICA-RAMOS
CASE NUMBER:   3:13-CR-0840-04 (FAB)

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1. You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2. After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3. You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4. You must answer truthfully the questions asked by your probation officer.
5. You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6. You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7. You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8. You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9. If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____   Date _____

Add. 12

AO 245D (Rev. 09/19)    Judgment in a Criminal Case for Revocations
Sheet 3B — Supervised Release

| | Judgment—Page | 6 | of | 6 |

DEFENDANT: Yavier MOJICA-RAMOS
CASE NUMBER: 3:13-CR-0840-04 (FAB)

# ADDITIONAL SUPERVISED RELEASE TERMS

Conditions imposed on 11/17/2014.

1. The defendant shall not commit another Federal, state, or local crime, and shall observe the standard conditions of supervised release recommended by the United States Sentencing Commission and adopted by this Court.

2. The defendant shall not unlawfully possess controlled substances.

3. The defendant shall refrain from possessing firearms, destructive devices, and other dangerous weapons.

4. The defendant shall refrain from the unlawful use of controlled substances and submit to a drug testing within fifteen (15) days of release, and thereafter submit to random drug testing, no less than three (3) samples during the supervision period and not to exceed 104 samples per year under the coordination of the U.S. Probation Office. If any such samples detect substance abuse, the defendant shall participate in an in-patient or out-patient substance abuse treatment program, for evaluation and/or treatment, as arranged by the U.S. Probation Officer until duly discharged. The defendant is required to contribute to the cost of services rendered (co-payment) in an amount arranged by the U.S. Probation Officer based on the ability to pay or availability of third party payment.

5. The defendant shall provide the U.S. Probation Officer access to any financial information upon request.

6. The defendant shall submit to a search of his person, property, house, residence, vehicles, papers, computer, other electronic communication or data storage devices or media, and effects (as defined in Title 18, U.S.C., Section 1030(e) (1)), to search at any time, with or without a warrant, by the probation officer, and if necessary, with the assistance of any other law enforcement officer (in the lawful discharge of the supervision functions of the probation officer) with reasonable suspicion concerning unlawful conduct or a violation of a condition of probation or supervised release. The probation officer may seize any electronic device which will be subject to further forensic investigation/analyses. Failure to submit to such a search and seizure, may be grounds for revocation. The defendant shall warn any other residents or occupants that
their premises may be subject to search pursuant to this condition. In consideration of the Supreme Court's ruling in Riley v. California, before any search of the defendants phone by probation, while the defendant is on supervised release, be performed only if there is reasonable articulable suspicion that a specific phone owned or used by the defendant contains evidence of a crime or violation of release conditions, was used in furtherance of a crime, or was specifically used during the actual commission of a crime.

7. The defendant shall participate in vocational training and/or job placement program recommended by the U.S. Probation Officer.

8. The defendant shall perform 200 hours of unpaid community service work during the probation period at a private non-profit or public facility to be selected and under such arrangements as the Probation Officer of the court may determine.

Conditions imposed on February 28, 2022.

1. He shall observe the standard conditions of supervised release recommended by the United States Sentencing Commission and adopted by this Court.

2. He shall participate in transitional and reentry support services, including cognitive behavioral treatment services, under the guidance and supervision of the Probation Officer. Mr. Mojica shall remain in the services until he is discharged by the service provider, with the approval of the Probation Officer.

3. He shall participate in a program or course of study aimed at improving his educational level and shall complete a vocational training program. Mr. Mojica shall participate in a job placement program recommended by the Probation Officer.

4. He shall cooperate in the collection of a DNA sample, as directed by the Probation Officer, pursuant to the Revised DNA Collection Requirements, and Title 18, U.S. Code Section 3563 (a)(9).

5. He shall provide the U.S. Probation Officer access to any financial information upon request.

6. He shall participate in an approved substance abuse monitoring program to determine if treatment is necessary. He shall refrain from the unlawful use and possession of controlled substances and shall submit to a drug testing, not less than three (3) samples during the supervision period, but not more than 104 samples each year, in accordance with the Drug Aftercare Program Policy of the United States Probation Office as has been approved by this Court. If the illegal use of controlled substances is detected in any sample, Mr. Mojica shall participate in an inpatient or an outpatient substance abuse treatment program, for evaluation or treatment, as arranged by the Probation Officer; payment shall be based on his ability to pay or the availability of payments by third parties, as approved by the Court.

7. He shall cooperate with child support enforcement authorities and pay child support as required by Law.

8. He shall be placed in the location restriction program with electronic monitoring device for a period of 6 months and shall remain in his home during prescribed times in accordance and under the modality of Home Detention. Mr. Mojica is restricted to his residence at all times, except for employment, education, religious services, medical, substance abuse, or mental health treatment, attorney visits, court appearances, court-ordered obligations, or other activities approved in advance by the Probation Officer. Different location monitoring technologies are available and may become available under this program during the term of Supervision, those are to be selected by the Probation Officer in adherence to broad operational considerations for purposes of behavior mitigating offender risks, providing supervision structure, and detecting various patterns of. Mr. Mojica shall pay for the electronic monitoring equipment at the prevailing rate in effect during the term of monitoring or in accordance with his ability to pay. Mr. Mojica shall sign the Location Monitoring Program Agreement, and abide by it, which will include, but will not be limited to, all technology and supervision requirements, responsibility towards damage to the equipment, and for the costs of participation in the program, as directed. The defendant shall refrain from obstructing, or attempting to obstruct, or tamper in any fashion, with the efficiency and accuracy of any technology which is required by this condition of supervision. Different technologies are available and/or may become available in this program during the term of supervision.

Add. 13

AO 245D (Rev. 09/19)   Judgment in a Criminal Case for Revocations
Sheet 1

# UNITED STATES DISTRICT COURT
District of Puerto Rico

|  | |
|---|---|
| UNITED STATES OF AMERICA | ) **AMENDED** JUDGMENT IN A CRIMINAL CASE |
| v. | )(For **Revocation** of Probation or Supervised Release) |
| Yavier MOJICA-RAMOS | ) |
| | )Case No.   3:13-CR-0840-04 (FAB) |
| | )USM No.   43050-069 |
| | ) AFPD Carlos A. Vazquez-Alvarez, Esq. |
| | ) Defendant's Attorney |

## THE DEFENDANT:

☑ admitted guilt to violation of condition(s) ___Five (5) conditions___ of the term of supervision.

☐ was found in violation of condition(s) count(s) _____ after denial of guilt.

The defendant is adjudicated guilty of these violations:

| Violation Number | Nature of Violation | Violation Ended |
|---|---|---|
| Mandatory Condition | The defendant was charged in Cr. 20-374-01 FAB. | 10/23/2020 |
| Mandatory Condition | The defendant illegally possessed illegal firearms and ammunitions. | 10/23/2020 |
| Mandatory Condition | The defendant tested positive for illegal substances. | 05/27/2020 |
| Standard Condition 7 | The defendant possessed illegal substances. | 05/27/2020 |

The defendant is sentenced as provided in pages 2 through ___6___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has not violated condition(s) _____ and is discharged as to such violation(s) condition.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

|  |  |
|---|---|
| | 02/28/2022 |
| | Date of Imposition of Judgment |
| | /S/ Francisco A. Besosa |
| | Signature of Judge |
| | Francisco A. Besosa, U.S. District Judge |
| | Name and Title of Judge |
| | 02/28/2022 |
| | Date |

Add. 14

AO 245D (Rev. 09/19)    Judgment in a Criminal Case for Revocations
Sheet 1A

Judgment—Page ___2___ of ___6___

DEFENDANT:  Yavier MOJICA-RAMOS
CASE NUMBER:  3:13-CR-0840-04 (FAB)

## ADDITIONAL VIOLATIONS

| Violation Number | Nature of Violation | Violation Concluded |
|---|---|---|
| Special Condition 5 | The defendant failed to report to a scheduled drug testing. | 10/11/2020 |

Add. 15

AO 245D (Rev. 09/19)   Judgment in a Criminal Case for Revocations
Sheet 2— Imprisonment

Judgment — Page ___3___ of ___6___

DEFENDANT: Yavier MOJICA-RAMOS
CASE NUMBER: 3:13-CR-0840-04 (FAB)

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total
term of :
\*\*\* Five (5) years to be served consecutively with the term of Seventy-Two (72) months imposed in Cr. 20-374-01
(FAB).

☑   The court makes the following recommendations to the Bureau of Prisons:

--That defendant be designated to Danbury to serve the term of imprisonment.
--That defendant be allowed to participate in vocational training courses, English as second language courses and the
500 hours for drug/alcohol treatment if he qualifies.

☑   The defendant is remanded to the custody of the United States Marshal.

☐   The defendant shall surrender to the United States Marshal for this district:

    ☐   at _____ ☐ a.m. ☐ p.m.   on _____ .

    ☐   as notified by the United States Marshal.

☐   The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☐   before 2 p.m. on _____ .

    ☐   as notified by the United States Marshal.

    ☐   as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

at _____ with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

Add. 16

AO 245D (Rev. 09/19)   Judgment in a Criminal Case for Revocations
Sheet 3 — Supervised Release

Judgment—Page __4__ of __6__

DEFENDANT:  Yavier MOJICA-RAMOS
CASE NUMBER:  3:13-CR-0840-04 (FAB)

## SUPERVISED RELEASE

The defendant will continue under supervised release:

Thirty (30) months under the same conditions originally imposed on him, to be served concurrently with the supervised release term, and same conditions imposed in Cr. 20-374-01 (FAB) and the following terms and conditions.

## MANDATORY CONDITIONS

1.   You must not commit another federal, state or local crime.
2.   You must not unlawfully possess a controlled substance.
3.   You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.
   ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4.   ☐  You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5.   ☑  You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6.   ☐  You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq*.) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7.   ☐  You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

Add. 17

AO 245D (Rev. 09/19)    Judgment in a Criminal Case for Revocations
Sheet 3A — Supervised Release

Judgment—Page <u>5</u> of <u>6</u>

DEFENDANT:  Yavier MOJICA-RAMOS
CASE NUMBER:  3:13-CR-0840-04 (FAB)

# STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision.  These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so.  If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity.  If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10.  You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11.  You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12.  If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction.  The probation officer may contact the person and confirm that you have notified the person about the risk.
13.  You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____    Date _____

Add. 18

AO 245D (Rev. 09/19)    Judgment in a Criminal Case for Revocations
Sheet 3B — Supervised Release

Judgment—Page  6  of  6

DEFENDANT: Yavier MOJICA-RAMOS
CASE NUMBER: 3:13-CR-0840-04 (FAB)

# ADDITIONAL SUPERVISED RELEASE TERMS

Conditions imposed on 11/17/2014.

1. The defendant shall not commit another Federal, state, or local crime, and shall observe the standard conditions of supervised release recommended by the United States Sentencing Commission and adopted by this Court.

2. The defendant shall not unlawfully possess controlled substances.

3. The defendant shall refrain from possessing firearms, destructive devices, and other dangerous weapons.

4. The defendant shall refrain from the unlawful use of controlled substances and submit to a drug test within fifteen (15) days of release, and thereafter submit to random drug testing, no less than three (3) samples during the supervision period and not to exceed 104 samples per year under the coordination of the U.S. Probation Officer. If any such samples detect substance abuse, the defendant shall participate in an in-patient or out-patient substance abuse treatment program, for evaluation and/or treatment, as arranged by the U.S. Probation Officer until duly discharged. The defendant is required to contribute to the cost of services rendered (co-payment) in an amount arranged by the U.S. Probation Officer based on the ability to pay or availability of third party payment.

5. The defendant shall provide the U.S. Probation Officer access to any financial information upon request.

6. The defendant shall submit to a search of his person, property, house, residence, vehicles, papers, computer, other electronic communication or data storage devices or media, and effects (as defined in Title 18, U.S.C., Section 1030(e) (1)), to search at any time, with or without a warrant, by the probation officer, and if necessary, with the assistance of any other law enforcement officer (in the lawful discharge of the supervision functions of the probation officer) with reasonable suspicion concerning unlawful conduct or a violation of a condition of probation or supervised release. The probation officer may seize any electronic device which will be subject to further forensic investigation/analyses. Failure to submit to such a search and seizure, may be grounds for revocation. The defendant shall warn any other residents or occupants that
their premises may be subject to search pursuant to this condition. In consideration of the Supreme Court's ruling in Riley v. California, the court will order that any search of the defendants phone by probation, while the defendant is on supervised release, be performed only if there is reasonable articulable suspicion that a specific phone owned or used by the defendant contains evidence of a crime or violation of release conditions, was used in furtherance of a crime, or was specifically used during the actual commission of a crime.

7. The defendant shall participate in vocational training and/or job placement program recommended by the U.S. Probation Officer.

8. The defendant shall perform 200 hours of unpaid community service work during the probation period at a private non-profit or public facility to be selected and under such arrangements as the Probation Officer of the court may determine.

Conditions imposed on February 28, 2022.

1. He shall observe the standard conditions of supervised release recommended by the United States Sentencing Commission and adopted by this Court.

2. He shall participate in transitional and reentry support services, including cognitive behavioral treatment services, under the guidance and supervision of the Probation Officer. Mr. Mojica shall remain in the services until he is discharged by the service provider, with the approval of the Probation Officer.

3. He shall participate in a program or course of study aimed at improving his educational level and shall complete a vocational training program. Mr. Mojica shall participate in a job placement program recommended by the Probation Officer.

4. He shall cooperate in the collection of a DNA sample, as directed by the Probation Officer, pursuant to the Revised DNA Collection Requirements, and Title 18, U.S. Code Section 3563 (a)(9).

5. He shall provide the U.S. Probation Officer access to any financial information upon request.

6. He shall participate in an approved substance abuse monitoring program to determine if treatment is necessary. He shall refrain from the unlawful use and possession of controlled substances and shall submit to a drug testing, not less than three (3) samples during the supervision period, but not more than 104 samples each year, in accordance with the Drug Aftercare Program Policy of the United States Probation Office as has been approved by this Court. If the illegal use of controlled substances is detected in any sample, Mr. Mojica shall participate in an inpatient or an outpatient substance abuse treatment program, for evaluation or treatment, as arranged by the Probation Officer; payment shall be based on his ability to pay or the availability of payments by third parties, as approved by the Court.

7. He shall cooperate with child support enforcement authorities and pay child support as required by Law.

8. He shall be placed in the location restriction program with electronic monitoring device for a period of 6 months and shall remain in his home during prescribed times in accordance and under the modality of Home Detention. Mr. Mojica is restricted to his residence at all times, except for employment, education, religious services, medical, substance abuse, or mental health treatment, attorney visits, court appearances, court-ordered obligations, or other activities approved in advance by the Probation Officer. Different location monitoring technologies are available and may become available under this program during the term of Supervision, those are to be selected by the Probation Officer in adherence to broad operational considerations for purposes of behavior mitigating offender risks, providing supervision structure, and detecting various patterns of. Mr. Mojica shall pay for the electronic monitoring equipment at the prevailing rate in effect during the term of monitoring or in accordance with his ability to pay. Mr. Mojica shall sign the Location Monitoring Program Agreement, and abide by it, which will include, but will not be limited to, all technology and supervision requirements, responsibility towards damage to the equipment, and for the costs of participation in the program, as directed. The defendant shall refrain from obstructing, or attempting to obstruct, or tamper in any fashion, with the efficiency and accuracy of any technology which is required by this condition of supervision. Different technologies are available and/or may become available in this program during the term of supervision.

Add. 19

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA,

     **Plaintiff,**

           **v.**                **Criminal No.** 20-374 (FAB)

YAVIER MOJICA-RAMOS,

     **Defendant.**

**OPINION AND ORDER**

BESOSA, District Judge.

     Before the Court is defendant Yavier Mojica-Ramos ("Mojica")'s motion to compel specific performance of the applicable plea agreement. (Docket No. 65.) For the reasons set forth below, Mojica's motion to compel is **DENIED.**

**I.   Background**

     The facts are not in dispute. On November 4, 2020, a grand jury charged Mojica with being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. section 922(g)(1) (count one), and for possessing a machine gun in violation of 18 U.S.C. section 922(o) (count two). (Docket No. 1.) The United States and Mojica entered into a plea agreement on August 5, 2021. (Docket No. 40.)

### A. The Plea Agreement

Mojica pled guilty to possession of a machine gun pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). (Docket No. 42.) In exchange for his guilty plea, the United States agreed "to dismiss the remaining counts [*sic*] of the Indictment" (*i.e.* the felon in possession of a firearm count). (Docket No. 40 at p. 7.)

The maximum penalty for count two is a term of ten years imprisonment, a fine not to exceed $250,000.00, and a supervised release term not to exceed three years. Id. at p. 4. The parties agreed, however, to request a sentence "within the applicable Guidelines range at a total offense level of 19 when combined with the criminal history category determined by the Court." Id. at p. 4. The United States Probation Office asserts that Mojica is subject to a "criminal history category of III." (Docket No. 56 at p. 13.) Based on this offense level and criminal history category, the "guideline imprisonment range is [from] 37 months to 46 months." Id. at p. 22.

Mojica recommends a "reasonable sentence that is not harsher than necessary." (Docket No. 63.) His sentencing memorandum does not, however, seek a specific term of imprisonment. Id. The United States requests that the Court "impose a sentence of 46 months, which would be the upper end of the applicable

sentencing range." (Docket No. 55 at p. 1.) According to the United States, extractions from Mojica's cellular phone demonstrate that he "continue[s] to embrace firearms, narcotics, and violent behavior." Id. at p. 3. These extractions include 255 images of various firearms; rounds of ammunition; a substance resembling marijuana packaged inside bulk, individual, and air-sealed bags; United States currency inside a Ziplock bag; pills inside unmarked containers; electronic scales and other drug paraphernalia. (Docket No. 55, Ex. 1.) Law enforcement officers also recovered footage of Mojica "brandishing an assault-style rife by repeatedly pointing the barrel at the individual who is recording the video." (Docket No. 55 at p. 6.) The United States contends that Mojica "has an interest in, and likely participates in, other criminal behavior beyond the" possession of a machinegun. Id. at p. 6.

Mojica argues that the United States breached the plea agreement by disclosing the cellular phone extractions to the Court. (Docket No. 65.) According to Mojica, this submission constitutes a "substantive request for an upward variance." Id. at p. 2. Essentially, Mojica avers that the United States' sentencing memo is a tacit violation of the plea agreement.

## II. Legal Standard

Plea agreements are governed "by general principles of contract law." United States v Frazier, 340 F.3d 5, 11 (1st Cir. 2003) (citation and quotation omitted); United States v. Goodman, 971 F.3d 16, 19-20 (1st Cir. 2020) ("A plea agreement is, after all, a contract under which both parties give and receive consideration") (citation and quotation omitted).    Because defendants forego fundamental rights by pleading guilty, courts hold the United States to "the most meticulous standards of both promise and performance." United States v. Clark, 55 F.3d 9, 12 (1st Cir 1995) (citation and quotation omitted); see Santobello v. New York, 404 U.S. 257, 262 (1971) ("[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."). Failure to comply with the plea agreement constitutes a breach, "whether done deliberately or not." United States v. Gonczy, 357 F.3d 50, 53 (1st Cir. 2004); Frazier, 340 F.3d at 11 ("[Even] an unintended breach [of the plea agreement] is, nevertheless, still a breach."). The United States need not, however, render an "enthusiastic" sentencing recommendation. United States v. Riggs, 347 F.3d 17, 19 (1st Cir. 2003).

Courts engage in a fact-specific inquiry to determine whether a specific sentencing recommendation comports with the plea agreement.  See United States v. Montañez-Quiñones, 911 F.3d 59, 64 (1st Cir. 2018) ("No magic formula exists for a prosecutor to comply with the agreed-upon sentence recommendation.") (citation and quotation marks omitted); United States v. Almonte-Núñez, 771 F.3d 84, 91 (1st Cir. 2014) ("We consider the totality of the circumstances in determining whether a prosecutor engaged in impermissible tactics.").  Tacit disregard for a plea agreement may constitute a breach. See Clark, 55 F.3d at 9 (noting that implicit violations of plea agreements may occur without "formal opposition") (citing United States v. Canada, 960 F.2d 263, 269 (1st Cir. 1992) ("While it can be argued that the government stopped short of explicitly repudiating the agreement, Santobello prohibits not only 'explicit repudiation of the government's assurances, but must in the interests of fairness be read to forbid end-runs around them.")).  For instance, setting forth "material reservations about the agreement" is indicative of a breach. Canada, 960 F.2d at 269; United States v. Miranda-Martínez, 790 F.3d 270, 275 (1st Cir. 2015) ([When] a prosecutor . . . gratuitously offers added detail garbed in implicit advocacy, a court might well find that the prosecutor is actually seeking a result in a manner that breaches the agreement."); United States

v. Irizarry-Rosario, 903 F.3d 151, 154 (1st Cir. 2018) (holding
that the United States cannot "lament the plea agreement's terms
or otherwise suggest it would seek a different sentence if free to
do so."); United States v. Warren, 8 F.4th 444, 447  (6th Cir.
2021) (holding that the United States breached the plea agreement
"by telling the court that it would not have entered the agreement
had it known that [the defendant's] felonious assault convictions
involved shootings").

## III. Discussion

Mojica sets forth three arguments in support of his motion
for specific performance.  First, Mojica maintains that evidence
described in the United States' sentencing memorandum is a Trojan
horse, a thinly veiled request for an upward variance housed
inside a disingenuous recommendation. (Docket No. 65 at p. 1.)
Second, he asserts that the United States failed to authenticate
the images and video extracted from his cellular phone.  Id. at
p. 2.   Third, referring to Mojica's crime of conviction as
"exceptional" and "alarming" is an attempt to circumvent the plea
agreement.  (Docket No. 65 at p. 2.)

### A. The Cellular Phone Extractions

The language set forth in the plea agreement controls the
Court's analysis.  United States v. Luján, 324 F.3d 27, 33 (1st
Cir. 2003) ("We start with the language of the [plea] agreement,

interpreting it under normal contract-law principles.") (citation omitted).   The plea agreement requires the United States to recommend a sentence within the applicable guideline range. (Docket No. 40 at pp. 3—4.)   This is precisely what the United States did.   The sentencing memorandum states unequivocally that "the nature of offense and the characteristic of [the] Defendant warrant a sentence of 46 months."   Id. at p. 13; see United States v. Davis, 923 F.3d 228, 239 (1st Cir. 2019) (holding that the United States did not breach the plea agreement because it "repeatedly recommended – in its sentencing memorandum and at the sentencing hearing – the 'severe' 240 month sentence it was entitled to recommend under the terms of the plea agreement and never argued for a different sentence").   Accordingly, the dispositive question is whether the cellular phone extractions belie this recommendation.

Mojica posits that the United States "had no such obligation to provide its unvetted exhibits."   (Docket No. 72 at p. 1.)   This statement is incorrect.   The United States complied with its "solemn obligation to provide relevant information to the sentencing court."   United States v. Ubiles-Rosario, 867 F.3d 277, 283 (1st Cir. 2017); United States v. Berzon, 941 F.2d 8, 21 (1st Cir. 1991) ("Generally, there is no limitation on the information which a court may consider in sentencing other than that the

information bear sufficient indicia of reliability to support its probable accuracy."); Gonczy, 357 F.3d at 53 ("The government's review of the facts of the case and of Gonczy's character cannot constitute a breach of the plea agreement as they were relevant to the court's imposition of sentence; no limitation can be placed by agreement or otherwise, on this information."); United States v. McCloskey-Díaz, 925 F. Supp. 2d 204, 209-10 (D.P.R. 2013) (holding that the United States fulfilled "its duty to provide the Court with all relevant sentencing information") (Besosa, J.).

In fact, 18 U.S.C. section 3661 ("section 3661") provides that:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

18 U.S.C. § 3661. "The intent of Congress" in enacting section 3661 "was clearly to leave wide open the information at sentencing." United States v. Viloria-Sepúlveda, 921 F.3d 5, 9 (1st Cir. 2019) (citation and quotation omitted). The photos and video extracted from Mojica's cellular phone are relevant to the factors set forth in 18 U.S.C. section 3553(a). Mojica, a felon with a prior firearm conviction, is portrayed in the extracted video as a cartoon panda while waiving an assault weapon. (Docket No. 55, Ex. 3.) An affinity for the unlawful possession of

firearms and controlled substances suggests a lack of respect for the law and a threat to public safety. See United States v. Vick, 852 F. App'x 546, 547 (1st Cir. 2021) (affirming a sentence based, in part, on the defendant's "obsession" with firearms); cf. Irizarry-Rosario, 903 F.3d at 155 ("It requires little imagination to understand why a defendant's accumulation of a small arsenal might counsel in favor of a higher sentence on a drug distribution charge.").

The Court is cognizant that the duty to disclose pertinent information may, in certain circumstances, undermine obligations set forth in the applicable plea agreement. See United States v. Davis, 923 F.3d at 237 (recognizing "a tension between the general principle that the government has a duty to provide to the court reliable information relevant to sentencing and the fact that 'certain factual omissions, helpful to the defendant, may be an implicit part of the bargain in a plea agreement") (citation and quotation omitted). The United States' sentencing memorandum is, however, consistent with the plea agreement. The plea agreement permits the United States to advocate for a sentence higher than the recommendation requested by Mojica. The United States may adduce evidence in support of its sentencing recommendation. See Montañez-Quiñones, 911 F.3d at 65 ("Thus, the prosecutor had a right (indeed, a duty) to explain to the court why the higher

sentence that it was urging was more appropriate."); Irizarry-Rosario, 903 F.3d at 155 ("The government was entitled to explain that recommendation to the sentencing judge, and did so briefly and interspersed with reaffirmations of the sixty-month sentencing recommendation for Count I.  This was not a breach."); Ubiles-Rosario, 867 F.3d at 287 ("Having unequivocally and repeatedly stated that it was recommending a sentence of 300 months, the government was free to offer reasons supporting its recommendation.") (citation and quotation omitted).  The United States need not "sugarcoat the facts." Almonte-Núñez, 711 F.3d at 91.

The First Circuit Court of Appeal's decision in United States v. Saxena, 229 F.3d 1 (1st Cir. 2000), is illustrative.  The defendant in Saxena pled guilty to, inter alia, nine counts of mail fraud and seventeen counts of selling unregistered securities.  Id. at 4.  The plea agreement required the United States to request a three-level reduction for acceptance of responsibility.  Id.  After the change of plea hearing, but before the imposition of sentence, the defendant "[solicited] subscriptions for a newsletter on the Internet and assur[ed] potential investors that [he] would guide them to astronomical profits."  Id.  The United States provided this information to the probation officer, who included details of the online solicitation

in the Presentence Investigation Report.  Id. at 5.  The defendant argued that the United States breached the plea agreement by furnishing this information to the Court.  Id.

The Saxena court held that the United States complied with the plea agreement, rejecting the defendant's "charge that the prosecutor . . . played fast and loose."  Id. at 6.  The sentence survived the defendant's appeal for two reasons.  First, the United States "approached the matter cautiously," acknowledging the "limited extent of [its] knowledge."  Id. at 7.  Second, and "most important," the United States "resolutely stood by the bottom-line recommendation that [it] had committed to make, urging a 24-month sentence even after the court had indicated that it would not award an acceptance-of-responsibility adjustment."  Id.

Like the prosecution in Saxena, the United States here obtained relevant information after entering into the plea agreement, but before the sentencing hearing.  (Docket No. 55.) Mojica would have the United States withhold this information from the Court in violation of its duty to disclose relevant information.  The United States presented this evidence, however, in a manner consistent with the plea agreement.  See Rivera-Rodríguez, 489 F.3d at 58 (holding that the United States did not breach the plea agreement by informing the Court of drug "quantities beyond the amount stipulated to in the plea

agreement"); <u>Ubiles-Rosario</u>, 867 F.3d at 287 ("The government did not breach the plea agreement by identifying evidence at the sentencing hearing that, in its view, supported the 300-month sentence that it was requesting the district court to impose."). Significantly, the United States remains steadfast in its endorsement of a sentence at the high end of the applicable guideline range.  Accordingly, Mojica's argument that providing details of the cellular phone extraction to the Court is unavailing.

**B. Reliability of the Cellular Phone Extractions**

The motion to compel specific performance of the plea agreement admonishes the United States for "[failing] to vet or authenticate the images its technicians purportedly found on Mr. Mojica's phone."  (Docket No. 65 at p. 2.)  This Court possesses "considerable leeway in deciding whether particular evidence is reliable enough for sentencing purposes."  <u>United States v. Padilla-Galarza</u>, 990 F.3d 19, 25 (1st Cir. 2021).  The Federal Rules of Evidence do not apply in the sentencing context.  <u>United States v. Rondón-García</u>, 886 F.3d 14, 20-21 (1st Cir. 2018).  Reliance on charged and uncharged conduct is appropriate if "proven by a preponderance of the evidence."  <u>United States v. González</u>, 857 F.3d 46, 59 (1st Cir. 2017).  Because the United States has

no obligation to authenticate the cellular phone extraction, this argument is meritless.

### C. Reference to the Exceptional Nature of this Case

Mojica contends that reference to the "exceptional" nature of this case is a violation of the plea agreement. (Docket No. 65 at p. 3.) He faults the United States for citing the 2019 Federal Bureau of Investigation Crime Report, a newspaper article, and other sources for the proposition that "firearm violence in Puerto Rico is a grave problem." (Docket No. 55 at pp. 9—11.) The First Circuit Court of Appeals has held, however, that "a sentencing court may consider the pervasiveness of [a particular] type of crime in the relevant community." United States v. Narváez-Soto, 773 F.3d 282, 286 (1st Cir. 2014). And based on this Court's "reasoned determination, predicated on its experience . . . gun-related violent crime [] is an acute problem in Puerto Rico." Id.

The United States and Mojica are permitted to present their respective views regarding the offense of conviction at the sentencing hearing. See Montañez-Quiñones, 911 F.3d at 65 ("The defendant's attempt to find a breach of the plea agreement by the prosecutor's unflattering narrative about the heinous nature of the defendant's crime is unpersuasive."). Because the United States has complied with the terms of the plea agreement, there is no basis for the Court to order any specific performance. Nor is

there any legitimate basis for the undersigned judge to recuse himself.

## IV. Conclusion

For the reasons set forth above, Mojica's motion for specific performance is **DENIED.**  (Docket No. 65.)  The sentencing hearing is set for **February 8, 2022 at 10:15 AM** before the undersigned in Courtroom 2.


       **IT IS SO ORDERED.**

San Juan, Puerto Rico, February 8, 2022.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
SENIOR UNITED STATES DISTRICT JUDGE

Add. 33

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    **Plaintiff,**

        **v.**                **Criminal No.** 20-374 (FAB)

YAVIER MOJICA-RAMOS,

    **Defendant.**

### MEMORANDUM AND ORDER

BESOSA, District Judge.

    The Court denied defendant Yavier Mojica-Ramos ("Mojica")'s motion to compel specific performance of the applicable plea agreement on February 8, 2022. See United States v. Mojica-Ramos, Case No. 20-374, 2022 U.S. Dist. LEXIS 24475 (D.P.R. Feb 8, 2022) (Besosa, J.) Mojica moves for the Court to reconsider this disposition. (Docket No. 79.) For the reasons set forth below, Mojica's motion for reconsideration is **DENIED**.

I.   Background

    The relevant facts are set forth in the February 8, 2022 Opinion and Order. See Mojica-Ramos, 2022 U.S. Dist. LEXIS 24475. Essentially, Mojica contends that the United States breached the operative plea agreement by adducing additional evidence to the Court in anticipation of sentencing. Id. Law enforcement officers recovered this evidence from Mojica's cellular phone, including

Add. 34

255 images of various firearms; rounds of ammunition; a substance resembling marijuana packaged inside bulk, individual, and air-sealed bags; United States currency inside a Ziplock bag; pills inside unmarked containers; electronic scales and other drug paraphernalia. (Docket No. 55, Ex. 1.). This Court held that the United States "complied with the terms of the plea agreement," providing "no basis . . . to order any specific performance." Mojica-Ramos, 2022 U.S. Dist. LEXIS 24475, at *13. Mojica moves for reconsideration, requesting that the Court conduct an evidentiary hearing.

## I.   Motion for Reconsideration Standard

The Federal Rules of Criminal Procedure do not explicitly provide for motions for reconsideration. See United States v. Ortiz, 741 F.3d 288, 292 n.2 (1st Cir. 2014) (citation omitted). The First Circuit Court of Appeals applies Federal Rule of Civil Procedure 59(e) ("Rule 59(e)"), however, to motions for reconsideration arising in the criminal context. See, e.g., United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009) (applying Rule 59(e) to a motion for reconsideration in a criminal case).

Pursuant to Rule 59(e), a district court will alter its original order only if it "evidenced a manifest error of law, if there is newly discovered evidence, or in certain other narrow situations." Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 930

(1st Cir. 2014) (citation omitted).  A motion for reconsideration does "not provide a vehicle for a party to undo its own procedural failures [or] allow a party [to] advance arguments that could and should have been presented to the district court prior to judgment."  Iverson v. City of Bos., 452 F.3d 94, 104 (1st Cir. 2006) (citation omitted).  "Rule 59(e) does not exist to allow parties a second chance to prevail on the merits . . . [and] is not an avenue for litigants to reassert arguments and theories that were previously rejected by the Court."  Johnson & Johnson Int'l v. P.R. Hosp. Supply, Inc., 322 F.R.D. 439, 441 (D.P.R. 2017) (Besosa, J.) (citations omitted).  In deciding a motion for reconsideration, the reviewing court has considerable discretion. Venegas-Hernández v. Sonolux Records, 370 F.3d 183, 190 (1st Cir. 2004).  "As a general rule, motions for reconsideration should only be exceptionally granted."  Villanueva-Méndez v. Nieves-Vázquez, 360 F. Supp. 2d 320, 323 (D.P.R. 2005) (Domínguez, J.)

## II. Discussion

The gravamen of Mojica's motion for reconsideration is that the cellular phone extractions "lack[] markers of reliability." (Docket No. 79 at p. 3.)  He maintains that the "facts do not support disclosure of the government's unvetted digital exhibits." Id.  Mojica does not, however, specify what, if any, "vetting" procedures are required at sentencing.

The First Circuit Court of Appeals has, however, held that "the sentencing judge may consider all relevant information that has sufficient indicia of reliability to support its probable accuracy." United States v. Gallardo-Ortiz, 666 F.3d 808, 811 (1st Cir. 2012) (citation and quotation omitted).  The Federal Rules of Evidence do not apply at sentencing.  United States v. Cintrón-Echautegui, 604 F.3d 1, 5 (1st Cir. 2010).  This Court "has wide discretion to decide whether particular evidence is sufficiently reliable to be used at sentencing." United States v. Fuentes-Moreno, 945 F.3d 383, 396 (1st Cir. 2020) (citation and quotation omitted); see United States v. Torres-Landrúa, 783 F.3d 58, 64 (1st Cir. 2015) ("We have recognized that the district court has almost unfettered discretion in determining what information it will hear and rely upon in sentencing deliberations, and to decide not only the relevance but also the reliability of the sentencing information.") (citation and quotation omitted). Moreover, "factual findings made at sentencing must be supported by a preponderance of the evidence."  United States v. Castillo-Torres, 8 F.4th 68, 71 (1st Cir. 2021).

Mojica does not dispute that his personal cellular phone contained photos and video of firearms and controlled substances. This evidence did not spontaneously appear on his device.  The United States contends that the photos and video demonstrate an

"infatuation with firearms." (Docket NO. 55 at p. 3.)   The
following inference is supported by the evidence: Mojica saved
several photos depicting firearms in his cellular phone because he
does, indeed, have an affinity for firearms.  This, standing alone,
is not a crime or even wrongful.  Many law abiding citizens have
an affinity for firearms, of which the right to keep and bear is
constitutionally protected.  U.S. CONST. AM. II.  But, given Mojica's
unlawful possession of a machinegun and the facts to which he
admitted in pleading guilty, it logically follows that the nature
of Mojica's affinity for firearms is insidious.

Mojica cites United States v. Carrión-Meléndez, 2011 U.S.
App. LEXIS 4650 (1st Cir. Feb. 22, 2022), for the proposition that
"photos scattered on the storage chip of a mobile device" are
unreliable. (Docket No. 79 at p.7.)  This statement is incorrect.
In Carrión-Melénez, the sentencing memorandum submitted by the
United States included "nearly fifty pictures that [allegedly]
showed [the defendant] packaging marijuana, and what appears to be
cocaine, for distribution, and his disturbing penchant for high-
capacity firearms and drugs."  2011 U.S. App. LEXIS, at *5
(international quotation omitted).  These photos derived from the
cellular phone the defendant "had in his possession when he was
arrested."  Id.  The United States further argued that the
"pictures, together with other evidence seized left no doubt that

Add. 38

Defendant is engaged in drug trafficking." <u>Id.</u>  This evidence purportedly triggered a four-level enhancement pursuant to U.S.S 2K2.1(b)(6)(B) for possession of firearms "in connection with drug trafficking." <u>Id.</u>  The district court applied this enhancement. <u>Id.</u>

The First Circuit Court of Appeals vacated the sentencing to "give the District Court the opportunity to clarify and, if appropriate, reconsider the precise basis for applying the enhancement." <u>Id.</u> at *13.  It did not, however, proclaim that cellular phone extractions are *per se* unreliable.  Id. at *14 (noting that there was a "surfeit of support in the record for a finding regarding [the defendant's] involvement with firearms[, but] the enhancement as applied here . . . also requires that the possession of the firearms be in connection with drug trafficking").

Mojica conflates reliability and relevance.  Reliability is "the extent to which an experience, test, or measuring procedure yields the same results on repeated trials."  Merriam-Webster Dictionary (available at https://www.merriam-webster.com/dictionary/reliability) (last visited February 25, 2022).  Relevance is the "quality, state, or condition of being relevant," referring to the "[logical connection and tendency] to prove or disprove a matter in issue."  Black's Law Dictionary 1481

(10th ed. 2014).  That is, can the specific piece of evidence be trusted?  See United States v. Connolly, 51 F.3d 1, 5 (1st Cir. 1995) ("Reliable hearsay can be used at sentencing.").  Mojica may argue that the photos and video are irrelevant, that they fail to prove he has affinity for firearms, and that the photos of controlled substances are immaterial at sentencing.  The reliability question is, however, distinct.  No party disputes that the photos are not from Mojica's cellular phone.  Whether the photos were taken a week or a decade ago, the mere presence of this evidence on Mojica's cellular phone establish that he has an affinity for firearms.  Accordingly, Mojica's motion for reconsideration is **DENIED.**

**IV. Conclusion**

For the reasons set forth above, Mojica's motion for reconsideration is **DENIED.**  (Docket No. 79.)  The sentencing hearing is set for **February 28, 2022 at 10:00 AM** before the undersigned in Courtroom 2.


**IT IS SO ORDERED.**

San Juan, Puerto Rico, February 25, 2022.

                              s/ Francisco A. Besosa
                              FRANCISCO A. BESOSA
                              SENIOR UNITED STATES DISTRICT JUDGE