**Nos. 22-1204, 22-1205**

# In the United States Court of Appeals for the First Circuit

_____

**UNITED STATES OF AMERICA,**
*Appellee,*

v.

**YAVIER MOJICA-RAMOS,**
*Defendant-Appellant.*

_____

On Appeal from the United States District Court
for the District of Puerto Rico
Case Nos. 13-cr-840-FAB, 20-cr-374-FAB
Hon. Francisco A. Besosa, U.S. District Judge

_____

## APPELLANT'S REPLY BRIEF

_____

**HÉCTOR L. RAMOS-VEGA**
Interim Federal Public Defender
District of Puerto Rico
241 F.D. Roosevelt Ave.
San Juan, PR 00918
T. (787) 281-4922
F. (787) 281-4899
E. Kevin_Lerman@fd.org

**FRANCO L. PÉREZ-REDONDO**
Assistant Federal Public Defender
Supervisor, Appeals Division

**KEVIN E. LERMAN**
Research & Writing Attorney

*Attorneys for Defendant-Appellant*
Yavier Mojica-Ramos

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................iv

STATEMENT OF THE CASE: CORRECTIONS ...................................................2

I.    REPLY REGARDING BREACH ISSUE .....................................................5

    A.    The appellee's brief doesn't challenge the conclusion that the prosecutor's advocacy fails this Court's impartial observer test............................................................5

    B.    Appellee reiterates the government's stated 46-month recommendation, but its substantive support for an upward variance undercut that statement. .........................12

    C.    The government's separate-recommendations interpretation lacks support and doesn't withstand good-faith analysis. ..............................................14

        1.    The separate-recommendations view lacks contextual support. ..........................................................14

        2.    The context of the plea agreement's promise and performance does not allow the government's conduct since it violated the duty of good faith. ...........................17

    D.    The divided-duties claim is meritless: the argument is undeveloped, no separate duty was triggered, and the government didn't responsibly balance any conflicting duty.......................................................................21

        1.    The divided-duties argument fatally lacks development.................................................................21

        2.    No conflicting duty was triggered here. ...........................21

        3.    Were a separate duty at play, the government did not balance the conflict. ..........................................24

E.  The government's previously unraised counterclaim lacks support in the record and doesn't withstand good-faith analysis. .......................................................... 24

F.  The government continued to breach the plea agreement in revocation proceedings in two ways, and this dimension of the breach claim was preserved ............. 26

G.  Remand should be ordered with low-end concurrent sentences. ............................................................ 29

II.  Reply Regarding The Unreasonable 11-Year Sentence ............... 30

A.  The Digital File Dump ........................................ 31

B.  Upward Variance for Gun Characteristics ........................... 32

1.  Preservation. ................................................ 32

2.  Sentences Based on Already-Accounted-For Factors and Failure to Explain .................................... 34

C.  Other Rationales. ............................................ 37

CONCLUSION ........................................................ 38

CERTIFICATE OF SERVICE ............................................ 39

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Correale v. United States*,
    479 F.2d 944 (1st Cir. 1973) ........................................................... 18

*Dukes v. Warden*,
    406 U.S. 250 (1972) ....................................................................... 29

*Kimbrough v. United States*,
    552 U.S. 85 (2007) ..................................................... 32, 33, 34, 36

*Nanakuli Paving & Rock Co. v. Shell Oil Co., Inc.*,
    664 F.2d 772 (9th Cir. 1981) .......................................................... 19

*Puckett v. United States*,
    556 U.S. 129 (2009) ....................................................................... 30

*United States v. Brown*,
    31 F.4th 39 (1st Cir. 2022) ............................................................ 18

*United States v. Brown*,
    500 F.2d 375 (4th Cir. 1974) ......................................................... 13

*United States v. Canada*,
    960 F.2d 263 (1st Cir. 1992) ............................................. 11, 13, 27

*United States v. Caraballo-Rodríguez*,
    480 F.3d 62 (1st Cir. 2007) ........................................................... 16

*United States v. Carrasquillo-Sánchez*,
    9 F.4th 56 (1st Cir. 2021) .............................................................. 34

*United States v. Clark*,
    55 F.3d 9 (1st Cir. 1995) .......................................................... 5, 21

*United States v. Flores-González*,
    34 F.4th 103 (1st Cir. 2022) ...................................................... 8, 34

*United States v. Frazier,*
   340 F.3d 5 (1st Cir. 2003).......................................................... 14, 17

*United States v. García,*
   698 F.2d 31 (1st Cir. 1983)................................................. 20, 29, 30

*United States v. García-Pérez,*
   9 F.4th 48 (1st Cir. 2021) ................................................................ 36

*United States v. Gonczy,*
   357 F.3d 50 (1st Cir. 2004)..................................................... *passim*

*United States v. González-Román,*
   115 F. Supp. 271 (D.P.R. 2015) ..................................................... 10

*United States v. Henry,*
   688 F.3d 637 (9th Cir. 2012) .......................................................... 37

*United States v. Kingsley,*
   851 F.2d 16 (1st Cir. 1988)....................................................... 19, 28

*United States v. Kravetz,*
   706 F.3d 47 (1st Cir. 2013) ............................................................. 32

*United States v. Kurkculer,*
   918 F.2d 295 (1st Cir. 1990).......................................................... 29

*United States v. Malone,*
   51 F.4th 1311 (11th Cir. 2022).................................................. 7, 37

*United States v. Montañez-Quiñones,*
   911 F.3d 59 (1st Cir. 2018).................................................... 16, 23

*United States v. Narváez-Soto,*
   773 F.3d 282 (1st Cir. 2014).......................................................... 16

*United States v. Newbert,*
   504 F.3d 180 (1st Cir. 2007).......................................................... 15

*United States v. Papaleo*,
    853 F.2d 16 (1st Cir. 1988) ................................................................ 30

*United States v. Rivera-Berríos*,
    968 F.3d 130 (1st Cir. 2020) ......................................... 8, 34, 35, 37

*United States v. Rivera-Ruiz*,
    43 F.4th 172 (1st Cir. 2022) .................................................... 23, 36

*United States v. Saxena*,
    229 F.3d 1 (1st Cir. 2000) ................................................................ 27

*United States v. Ubiles-Rosario*,
    867 F.3d 277 (1st Cir. 2017) ................................................. *passim*

*United States v. Vélez Carrero*,
    77 F.3d 11 (1st Cir. 1996) ............................................................... 13

*United States v. Viloria-Sepúlveda*,
    921 F.3d 5 (1st Cir. 2019) ........................................... 8, 9, 10, 11

*United States v. Yeje-Cabrera*,
    430 F.3d 1 (1st Cir. 2005) ............................................................... 23

## FEDERAL STATUTES

18 U.S.C. § 3553(a)(1) .............................................................................. 26

18 U.S.C. § 3553(b)(1) .............................................................................. 10

18 U.S.C. § 5845(a) ................................................................................... 35

## OTHER AUTHORITIES

Burton, *Breach of Contract and the Common Law Duty to Perform
    in Good Faith,*
    94 Harv. L. Rev. 369 (1980) ...................................................... 17, 25

Gardner & Rifkind, *A Basic Guide to Plea Bargaining Under the Federal Sentencing Guidelines*,
7 Crim. Just. 14 (1992) .................................................................. 23

Justice Man. 9-27.400 ............................................................. 11

Justice Man. 9-27.720 ............................................................. 19

Restatement (Second) of Contracts § 205, cmt. a .................................. 19

### UNITED STATES SENTENCING GUIDELINES

USSG § 2K2.1(a)(1) .................................................................. 35

USSG § 2K2.2(a) ..................................................................... 35

Nos. 22-1204, 22-1205

# In the United States Court of Appeals for the First Circuit

_____

**UNITED STATES OF AMERICA,**
*Appellee,*

v.

**YAVIER MOJICA-RAMOS,**
*Defendant-Appellant.*

_____

On Appeal from the United States District Court
for the District of Puerto Rico
Case Nos. 13-cr-840-FAB, 20-cr-374-FAB
Hon. Francisco A. Besosa, U.S. District Judge

_____

## APPELLANT'S REPLY BRIEF[1]

_____

TO THE HONORABLE COURT:

The defendant-appellant, Yavier Mojica-Ramos ("Mr. Ramos"), represented by the Federal Public Defender for the District of Puerto Rico through undersigned counsel, respectfully states and prays:

_____

[1] Citations: Appellant's Opening Brief ("AB__"); Government Brief ("G__"), Appendix ("A__"), Supplemental Appendix ("SA__").

### STATEMENT OF THE CASE: CORRECTIONS

The government's statement of the case warrants correction for the sake of accurate appellate review. Whereas Mr. Mojica's brief captures the government's challenged conduct and the case background in detail, AB3-AB27, the government's statement omits relevant prosecutorial actions, instead making only a passing reference to its own sentencing submission. G7-G8.

It includes no description of its 240-image file dump. It omits the prosecutor's recommendation language, leaving out the inflammatory allegation that Mr. Mojica's "danger to the community and the serious nature of the offense" were "exceptional." AOB 9. It omits repeated suggestions that Mr. Mojica "participates in other criminal activity involving high-capacity, high-powered weapons of war." AB9. It ignores the prosecutor's statement that "[t]he nature of the offense in this case goes beyond the simple possession of a machinegun." AB9; A60.

As with any factual lacuna at a pleading's front end, the government's narrative repeats in the brief's analysis sections. Continuing to downplay the prosecutor's upward-variance-focused advocacy, the government refers to challenged prosecutorial conduct as just the

"attachment of the photographs and video taken from Mojica's cell phone" and "discussion of the sentencing factors." G24. This understates the government's digital-file proffer and theorized link between simple possession and internet sources used to depict Puerto Rico as a land of "acute violence." A64.

The Appendix and Mr. Mojica's briefing contain the actual under-lying dispute, which involved the use of government reputational strength to speculate that this case calls for greater concern than any mine-run case because a "backdrop of acute violence" means that "[t]he contents of Defendant's phone show[] that Defendant is not a first-time offender but is an individual with a penchant for high-capacity firearms, drugs, and criminal activity." A64-A65.

Without correction the appellee's brief may distort evaluation of the probable impact of government's sentencing advocacy, including claims that Mr. Mojica was "*potentially involved in other violent criminal activity and/or drug trafficking activities.*" A65 (alleging other "potential" crimes involve "intimidation, murder, and protection of drugs….") (citation omitted). The appellee has the right to submit its own

statement of the case, Fed. R. App. P. 28(b)(3); what it cannot do is repaint conduct that's maligned with conduct that appears benign.

## I.   REPLY REGARDING BREACH ISSUE

Though the government doesn't deny the probable effect of its advocacy — including its ideologically charged murder memo, its digital file dump, etcetera — was an upward variance, the appellee's brief alleges the government delivered adequate contractual performance. The government's arguments should be rejected as follows.

### A.   The appellee's brief doesn't challenge the conclusion that the prosecutor's advocacy fails this Court's impartial observer test.

The government's brief supplies sufficient detail to be taken as conceding breach for failure to supply the "benefit of the bargain" in the plea and act in good faith. *United States v. Clark*, 55 F.3d 9, 11 (1st Cir. 1995).[2]

Carefully read, the government brief does not argue that its actual recommendation is one that an impartial observer would perceive as one in which the prosecutor believed a guideline sentence was appropriate. *See* AB32-AB53. Nor does the government take issue with any of the

---

[2] The government does claim it had right to present aggressive advocacy because the plea agreement allowed "separate recommendations." This hypothesis is unsupported by the context and plain language of the agreement and fails under good-faith analysis. *See infra* Section I.C.

contextual evidence appropriate for testing the government's recommen-

dation, including:

- Prior to the government's submission, A53-A307, Probation recommended an upward variance. SA26.

- The government knew the probable outcome of its advocacy was an upwardly variant sentence. A323-A331.

- The government has frequently secured upward variances using the same or even less egregious conduct than was seen here. AB16-AB17, AB35-AB41.

- The government's arguments used ideological firearm and policy terminology used regularly by the sentencing court and the government as reasons to believe the guidelines are insufficient. *See* AB45-AB46.

- The government used specialized terms meaningful to a guideline range's adequacy. *See* AB35-AB38.

And while the district court mistakenly thought the government, in submitting these materials, acted under some duty that arose after the plea agreement was filed, AB14-AB15; AD30, the government has abandoned any claim that any specific action was triggered by a specific solemn duty. *See infra* Section I.D.

So, the government's brief does nothing to challenge the conclusion that its actions lacked good faith and its performance failed the impartial

observer test. *United States v. Gonczy*, 357 F.3d 50, 54 (1st Cir. 2004); AB33. The government makes no attempt to even argue that any "fair reading of the prosecutor's argument to the court would lead an impartial observer to think" the prosecutor "thought a guideline sentence was an adequate sentence." *Gonczy*, 357 F.3d at 54 (cleaned up); AB33.

Instead, the government's brief implicitly accepts it sought an above-the-guideline sentence, acknowledging "some of the sentencing factors" the government stressed across its murder-and-violence-focused memorandum "support a variant sentence." G29; *see, e.g.*, *United States v. Malone*, 51 F.4th 1311, 1322 (11th Cir. 2022) (breach found based, in part, on government "suggestion at sentencing that [Malone] was a 'sociopath' and its comparison of his non-violent offenses to serious violent crimes.").

The government's admission of upward-variance support is appropriate: it undisputedly followed a blueprint for getting and defending upward variances in simple-firearm-possession cases. *See* AB35-AB41. It has no reason to believe that this blueprint will build something different if relabeled. A61. Hence, the government's briefing disproves its asserted "routine request[s] for guideline sentences," G32. No routine exists when

the government knows it's submitting material triggering above-the-guidelines sentences.

The second half of the government's brief — seeking affirmance based on its submissions — illustrates this. First, as mentioned, *see* AB35-AB41, *Viloria-Sepúlveda* serves as the government's blueprint for getting simple-firearm-possession upward variances. Appellee's cited *Viloria-Sepúlveda* language, G40-G41, mirrors district court conjectures of criminal propensity, A53-A307, and embrace of "violent criminal behavior." A55.

And like the government's sentencing memo, the appellee's brief seeks affirmance based on a belief in violent propensities of Puerto Rico society. G54-G55.

The government brief still retorts that it made a "request for a guideline sentence" in at least six cases that ended up in an upward variances, from *Rivera-Berríos*, to *Flores-González*, to *Carmona-Alomar*. *See* G31-G32 n.3. These cases are examples of substantive submissions the government knows provoke upward variances. *See* A327-A331 (referencing *Carmona-Alomar* as an example of inflammatory submissions that substantively seek above-guideline sentences).

Still the government insists these cases differ based on their terms of resolution (some had plea agreements; others didn't). It doesn't develop this point or show why the cases don't inform impartial-observer analysis. *Gonczy*, 357 F.3d at 54. Whether pursuant to an agreement or not, a recommendation that invokes the specter of murder and violence in a non-violent matter, while saying a case is "beyond the simple possession of a machinegun" and involves extraordinary dangerousness, A60, is one any observer knows aims at an upward variance. A353-A361.

As the responsive brief does not deny, "the government cannot distinguish its submission here from the submissions in *Viloria-Sepúlveda*, *Vega-Rodríguez*, *Carmona-Alomar*, *Nieves-Díaz*, and myriad cases," AB16, resulting in upward variances. *See, e.g.*, A354.

Thus, the responsive brief "is devoid of any colorable reason to provide content mirroring th[at] regularly used to request and obtain upward variances." A354.

And yet, the comparison with similar upward-variance-driving advocacy doesn't capture the full scope of what the prosecutor did here. The government's language against Mr. Mojica stands alone in terms of express linkage to terms of art used for outside-the-guidelines variances.

A310; A324-A332; A335-A336; AB36-AB40. This is yet another fully developed proposition left unchallenged by a brief that neglected to include the government's actual conduct below. *See supra* pp. 2-4. Variances are "for an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration" by the guidelines, 18 U.S.C. § 3553(b)(1). The government's language, *see, e.g.*, A60, leaves no question the request here was for a variance.

And while the government disclaims responsibility to consider the subject sentencing court's tendencies, such tendencies simply show how egregious the government's conduct was.[3] And the government's choice of tactics has gained upward-variance traction with many judicial officers. *See United States v. González-Román*, 115 F. Supp. 271 (D.P.R. 2015) (Fusté, J.); *United States v. Viloria-Sepúlveda*, 921 F.3d 5 (1st Cir. 2019) (Pérez-Giménez, J.).

---

[3] The government tries to recast Mr. Mojica's claims as a stated obligation that the government has to tailor its advocacy to a specific judge. G31. The government has to act with good faith and meet the impartial observer test. This includes anticipating obvious outcomes before individual courts or groups of courts. *See infra* at pp. 11-12.

When judicial trends were known to, and advanced by, the government,[4] the government offers no reasons why good faith did not require more here. *See* A324-A330 (showing tactical parallel to *Viloria-Sepúlveda* and myriad upward-variance cases); AB16- AB18, AB35-AB41 (same on appeal). Performance on a plea contract is notoriously context dependent. *See* AB51; *United States v. Canada*, 960 F.2d 263, 268 (1st Cir. 1992) (breach assessed based on prosecutor's "overall conduct").

Therefore, the impartial observer test necessitates consideration of district-specific concerns, including subsets of judges who've arrived at sets of beliefs about the district. After all, the government litigates every federal criminal case in Puerto Rico and attends to Circuit appeals, and its attorneys must only enter plea agreements that "honestly reflect the totality and seriousness of the defendant's conduct," Justice Man. 9-27.400; *see also* Justice Man. 9-27.420(8) ("prosecutor should realize that the position he/she agrees to take with respect to sentencing may have a

---

[4] For one of dozens of murder-focused, variance-seeking memoranda, see *United States v. Rivera-Nieves*, D.P.R. No. 17-cr-125-DRD, ECF No. 41 (Aug. 6, 2017) (asking for Puerto Rico-focused upward variance).

significant effect on the sentence that is actually imposed."). The government cannot be indifferent to court-specific consideration. This was reversible breach.

### B. Appellee reiterates the government's stated 46-month recommendation, but its substantive support for an upward variance undercut that statement.

The government's main charge on appeal is that no breach occurred if the government said it was seeking a 46-month sentence. G23-G24. This echoes the district court's saying the government was "steadfast in its endorsement of a sentence at the high end of the applicable guideline range." AD31. But a prosecutor's mouth-service to the plea fails if this Court's plenary review concludes the government's overall conduct suffers either (1) lack of good faith *or* (2) inability to convince an impartial observer that the prosecutor believed the bargained-for sentence was sufficient. *Gonczy*, 357 F.3d at 54.

The government acknowledges it pushed the court to go upward from 37 months, and acknowledges it elucidated some factors that "could support a variant sentence," G29, but it gave no reason to stop at 46. Its vast and inflammatory submission, A53-A307, and sentencing comments, A401-A402; A463-A465, launched an upward-variance-sentence-

seeking missile. Once launched, the gentle humming of "46 months" did nothing to slow the missile's assent. The government's years of experience in upward-variance advocacy and defense shows this. AB36- AB55.

While it matters in other contexts that the government exacerbated its breach by not asking for a specific number of months, *e.g.*, *United States v. Canada*, 960 F.2d 263, 268 (1st Cir. 1992), this is a case where the muttered guideline "request" was undercut "by the AUSA's substantive argument." *Gonczy*, 357 F.3d at 54;*Canada*, 960 F.2d at 268.

The red brief provides no answer to the problem that the promise was not to just make a numerical statement but to actually make a guideline-sentence recommendation "expressed with some degree of advocacy," *United States v. Brown*, 500 F.2d 375, 377 (4th Cir. 1974), using "the prestige of the government and its potential to influence the district court." *United States v. Vélez Carrero*, 77 F.3d 11, 12 (1st Cir. 1996).

So we're left with a record that lacks such advocacy and a great degree of emphatic support for an outside-the-guidelines sentence, especially when context showed the case heading toward treacherous upward variance territory before the government uttered the first word of its memorandum or updated its trove of digital files. *See* AB6-AB7; A429

(judge commented the case was more serious than another sentenced in the guidelines); SA26 ¶¶ 100-101 (Probation proposing upward variances grounds); And when there was still time to mitigate damage, the government saw the judge's citation to upward-variance cases in assessing the government's submission and didn't act.

**C.     The government's separate-recommendations interpretation lacks support and doesn't withstand good-faith analysis.**

Though it recognizes its advocacy was consistent with a request for outside-the-guidelines recommendation, the government argues it's conduct is saved from breach based on an entitlement to seek a high-end sentence and oppose a low-end one. G25. But this reading lacks contextual support, and it is irreconcilable with the "implied obligation of good faith and fair dealing." *See United States v. Frazier*, 340 F.3d 5, 11 (1st Cir. 2003).

**1.     The separate-recommendations view lacks contextual support.**

This position relies entirely on a misreading of plea agreement paragraph 8. A39. The plea agreement did not reserve the fierce competition found to not be plain error in *United States v. Ubiles-Rosario*, 867 F.3d 277, 287-290 (1st Cir. 2017).

We start with the text of the government-drafted agreement. Its plain language does not contemplate split recommendations. Rather, "the parties will request ***a sentence*** of imprisonment within the applicable Guidelines range." A39 ¶ 8. As government counsel elaborated at the change-of-plea hearing: "[t]here is *a* recommendation by the parties that the parties will be asking that Mr. Mojica be sentenced to *a* term of imprisonment within the offense level of 19." A377.

Put simply, Appellee's reading conflicts with the text of the agreement and the parties' stated understanding. A39 ¶8; A377. If there were doubt, the government should have raised it in the motion-to-compel-specific-performance briefing. But it didn't. The government never claimed it carved out any aggressive, adversarial "punch"-throwing-advocacy-right asserted now. A25. And the government "must bear the cost of ambiguities in the plea agreement." *United States v. Newbert*, 504 F.3d 180, 186 (1st Cir. 2007); *United States v. Isom*, 580 F.3d 43, 51 (1st Cir. 2009). So if the government developed an argument for ambiguity (it hasn't), the court still must reject its reading.

Mr. Mojica's reasonable understandings of the agreement were aired in district court with no objection from the government. *See, e.g.*,

A352-A353; 358-A361. When the parties bound themselves to recommend *a sentence* within a sliver-wide 37-to-46-month range, Mr. Mojica reasonably believed the government would devote its argument to a sentence within that range. The agreement did not allow the government to throw "'punches when arguing for a stiffer sentence.'" G25 (quoting plain-error decision in *United States v. Montañez-Quiñones*, 911 F.3d 59, 65 (1st Cir. 2018)).

And though *Montañez-Quiñones* tacitly approved a few verbal jabs, it's no-plain-error ruling, so it's not a binding "ruling on the merits." *United States v. Caraballo-Rodríguez*, 480 F.3d 62, 70 (1st Cir. 2007). Further, verbal jabs differ from hundred pages of upward-variance support here when the government could already expect a heavy sentence based on experience, *see, e.g.*, *United States v. Narváez-Soto*, 773 F.3d 282 (1st Cir. 2014), and events in this case.

Finally, this case's agreement is irreconcilable with bargained-for split recommendations. *Ubiles-Rosario* may have anticipated dueling positions. Ubiles-Rosario could recommend a low-end sentence; "the government reserved the right to" recommend "up to three hundred months." *Ubiles-Rosario*, 867 F.3d at 280 (cleaned up). No such reservation

occurred here. Thus, the plain language and context counsel rejection of the separate-recommendations hypothesis.

> **2.      The context of the plea agreement's promise and performance does not allow the government's conduct since it violated the duty of good faith.**

Aside from general context and textual analysis, the government cannot rely on its separate-recommendations view to advocate for "sentencing factors" that "could support a variant sentence," G29, when the probable outcome is an upward variance. If the government believed the government-drafted agreement bargained for a gladiator-like posture against Mr. Mojica, a duty of good faith still limits government action. *See Frazier*, 340 F.3d at 11; *see generally* Burton, *Breach of Contract and the Common Law Duty to Perform in Good Faith,* 94 Harv. L. Rev. 369 (1980).

So even if a split-recommendation clause allowed heavy hits in some other case, it must be rejected here. For example, *Ubiles-Rosario* had very different context. A 38-month intra-range gap separated the government's reserved position from the low-end sentence. That gap alone exceeded the entire low-end sentence here. The following visual

helps illustrate that the narrow guideline here made throwing heavy

blows unsafe:



Mr. Mojica remained "entitled to the 'benefit of the bargain' *and* the

'good faith' of the prosecutor" in an agreement with only a maximum nine

months' wiggle room. *United States v. Brown*, 31 F.4th 39, 50 (1st Cir.

2022) (citations omitted) (emphasis added).

Where the government must observe "most meticulous standards of

both promise and performance," *Correale v. United States*, 479 F.2d 944,

947 (1st Cir. 1973), the government cannot operate under a view of the

contract that would ultimately divest Mr. Mojica of the benefit of a

reciprocal bargain. *See United States v. Kingsley*, 851 F.2d 16, 21 (1st Cir.

1988) (using contractual analysis to enforce a plea agreement and award a defendant the "benefit of the bargain").

Even if the government's view of split agreements was right, good-faith controls if it means awarding Mr. Mojica the substance of what he bargained for. *See, e.g.*, *Nanakuli Paving & Rock Co. v. Shell Oil Co., Inc.*, 664 F.2d 772, 780 (9th Cir. 1981) (contextual factors, "unless … carefully negated," given effect even if they are "seemingly contradictory" to the express terms of the agreement); *See* Restatement (Second) of Contracts § 205, cmt. a ("Good faith performance … emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.").

So the government could not disregard provisions requiring it to faithfully advocate for a sentence between 37 and 46 months simply to show it thought 46 was more appropriate. Mr. Mojica reasonably expected the government to "apply relevant sentencing factors to the facts in a way that most accurately and convincingly support[ed] the government's recommended sentence…." Justice Man. 9-27.720 cmt. 3 (cited at A359).

Nor does a government "belief" in adequate performance suffice. G29. Good faith does not permit performance to be understood as a wholly subjective measure; this would "render a significant element of the consideration for appellant's change of plea illusory." *United States v. García*, 698 F.2d 31, 36 (1st Cir. 1983).

Meticulous promise and performance do not support the government's claim now that "if Mojica wanted to ensure the government did not engage in advocacy to support a different sentencing recommendation, he could have negotiated a plea agreement with a joint recommendation." G28.

Finally, even if the *Ubiles-Rosario* case could serve as a comparison, this case saw a scale of material and tenor of argument that was exceptionally inflammatory. *See* A53-A307; A401-A402; A463-A465

As opposed to few verbal jabs in the courtroom, the record contains abundant written materials in which the prosecutor openly used terms of art associated with upward variances. A323-A324; AB35-AB38.

### D. The divided-duties claim is meritless: the argument is undeveloped, no separate duty was triggered, and the government didn't responsibly balance any conflicting duty.

This case isn't about a competing ethical duty — at least not one that's factually or legally significant. The government states its conduct here is justified by what it calls a "solemn obligation to provide relevant information to the sentencing court." G26. No such duty was triggered.

#### 1. The divided-duties argument fatally lacks development.

Most simply, the government points to no act driven by a duty in conflict with its contractual obligation to the plea agreement. When confronting Mr. Mojica's motion to compel, and now on appeal, the government had no answer to the assertion that the government's pleadings at A53-A307 and remarks were driven by no specific duty at all. A401-A402 and A463-A465. Such disclosure duties are for "'pertinent factual information.'" *Clark*, 55 F.3d at 13.

#### 2. No conflicting duty was triggered here.

When the government's brief cites an obligation to raise "new facts," it points to no specific facts it was forced to present. It has on appeal abandoned any such claim regarding the digital-file-dump presentation. For purposes of resolution, then, there's no dispute that the court erred

in finding "the United States here obtained relevant information *after* entering into the plea agreement, *but before* the sentencing hearing." AD30 (italics added). The government had this material all along even though it never tried to evaluate whether it reliably depicted anything illegal.

What exactly is the duty if it's not the one the district court focused on? The government's view is that it ended up with an obligation to support a higher sentence because Mr. Mojica failed to "negotiate[] a plea agreement with a joint recommendation." G29. So the government alleges the prosecutor had "a right (indeed a duty) to explain to the court why the higher sentence" he sought was "more appropriate." G27 (citations omitted). Again, though, as discussed above and in the opening brief, the government brief assumes plea-agreement terms and context absent here; and its citations to plain-error decisions don't back these assumptions. AB46-AB50; *see supra* p. 16.

As this case played out, the government's only duty here was to explain under paragraph 8 why the court should impose a sentence consistent with the parties' "request [for] ***a sentence*** of imprisonment within the applicable Guidelines range." A39 ¶ 8.

Aside from that, the competitive-recommendation theory had no effect on dictating the government's alleged conflicting obligation here. And the authority proffered is matryoshka doll of inapposite, context-dependent, non-merits-reaching decisions. *See* G28 (citing plain error decisions in *Lessard*, *Montañez-Quiñones*, and *Rivera-Ruiz*). It's true the government *can* encounter a conflicting duty when reliable facts arise after a change-of-plea hearing or upon the court's raising of an issue. *See Gonczy*, 357 F.3d at 53.

But what the government did at A53-A307, A401-A402, and A463-A465, was driven by no such duty connected to reliable factual information about the subject offense. *Id.* The obligation of candor to the Court comes down to one general point: "Counsel should not affirmatively misstate the material facts at sentencing." *United States v. Yeje-Cabrera*, 430 F.3d 1, 27-28 (1st Cir. 2005) (citation omitted). Beyond a duty not to mislead, counsel have broad discretion in how they "handle unclear or less provable facts." *Id.* at 28 (citing Gardner & Rifkind, *A Basic Guide to Plea Bargaining Under the Federal Sentencing Guidelines*, 7 Crim. Just. 14, 16 (1992)). "'Where facts are unclear or unascertainable, the parties may

agree on some form of them without further justification or explanation to the court.'" *Id.*; *see also* AB48-AB50.

### 3. Were a separate duty at play, the government did not balance the conflict.

The government does not dispute that conflicting duties need to be managed cautiously. Yet, even in *Ubiles-Rosario*, where there was an actual violent crime, the prosecutor acknowledged mine-run sentencing facts, advising the "court that the government's recommendation of 300 months appropriately balanced Ubiles's acceptance of responsibility and expression of remorse with the severity of the crime." 867 F.3d at 281. The government leaves unanswered the question of how it fulfilled any duty contrary to the plea-agreement promise with expressions that were factually accurate, legally neutral, and non-argumentative. *See* AB48-AB50. It did not.

### E. The government's previously unraised counterclaim lacks support in the record and doesn't withstand good-faith analysis.

As discussed, the government attacked Mr. Mojica's own discussion of remorse and confessions of personal struggle, calling his reflections "tergiversation." A345; AB28-AB29, AB41-AB43. The responsive brief

appears to accuse Mr. Mojica of provoking the government's attacks. G32-G33.

This counterclaim of breach was obviously not presented below and was waived. Anyway, it does not withstand scrutiny under the doctrine of good faith, which forbids a party from feigning dissatisfaction with another's performance only to reap an opportunity forgone in the contract. Burton, *Breach of Contract* at 389-90.

And it disregards context showing no issue with Mr. Mojica's performance. Mr. Mojica's memorandum was filed after the PSR expressly supported an upward variance, AB7- AB8, and after the government filed its challenged memorandum and digital file dump, A53-A307. A party's performance on a plea agreement is based on their overall conduct. A32-A33. Mr. Mojica's sentencing memorandum and advocacy at sentencing never ventured out of bounds. SA31-SA38.

The government accuses Mr. Mojica, though, of implicitly of going too far in saying the "facts" of *United States v. Vázquez-Peña*, D.P.R. 20-104, were "worse" than this case. G32. Let's examine the broader context. *Vázquez-Peña*'s facts *were objectively* "worse" in certain respects. Vázquez-Peña led traffic officers on a high-speed chase, causing a crash.

D.P.R. No. 20-104, ECF No. 1-1 at 2. Yet, the sentencing judge had already emphatically expressed that the present case — beyond the offense facts — was materially more serious. A52; A429-A430. The facts of a case, the "nature and circumstances" of it, 18 U.S.C. § 3553(a)(1), are just one piece of assessing a particular guideline range.

Nor does the government's claim, G32-G33, try to explain the scope of the government's unfounded attacks on Mr. Mojica advocacy. It says only that "[i]t was fair game for the government *to note* that Mojica's sentencing memorandum could be interpreted as an implicit request for a sentence less than 37 months." G33. It has no basis to say it was fair game to attack, without evidence, Mr. Mojica's character, Catholic faith, family history, lived experience, and acceptance of responsibility, as it did at A344-A345. *See* AB41- AB43. This violated fair dealing, worsened the breach, and it is worse than the government's brief acknowledges.

### F.     The government continued to breach the plea agreement in revocation proceedings in two ways, and this dimension of the breach claim was preserved.

The government alleges waiver in the revocation in which the government sought an aggregate upwardly variant sentence and constructively sought an upward variance in the revocation matter. Forfeiture

applies in breach claims "[w]hen a defendant has knowledge of conduct ostensibly amounting to a breach of a plea agreement[] yet does not bring that breach to the attention of the sentencing court." *United States v. Saxena*, 229 F.3d 1, 5 (1st Cir. 2000). Here, Mr. Mojica objected, making this Court's review de novo in assessing whether the prosecutor's "overall conduct" was "reasonably consistent with making" the stipulated recommendation. *Canada*, 960 F.2d at 268; AB51.

Within the broader context of applicable sentencing statutes and guidelines, the parties knew the court's default position would be consecutive sentences, which would be aggregated by the Department of Justice upon prison designation.

While the government seeks to limit this review to new criminal case, Mr. Mojica specifically argued for the Court to find breach in both cases. Mr. Mojica argued as follows:

> Should the court elect not to hold an evidentiary hearing, it must make factual findings consistent with Mr. Mojica's representations and find that (1) the government materially breached the plea agreement, and (2) order specific performance on the plea agreement by striking the government's breaching memorandum and exhibits, transferring this and the revocation matter in case number 13-840 (FAB) to another judge, and ordering the

> government to advocate at sentencing consistent
> with the plea agreement, caselaw, applicable sen-
> tencing statutes and guidelines.

A353. Further, when Mr. Mojica requested an evidentiary hearing to

address any disputes on the parties' reasonable expectations when en-

tering the plea, and the government looked into the face of the straight-

forward claim that the breach implicated the revocation matter. A335.

Yet, it raised no disputes.

When it comes to the breach-by-seeking-an-aggregate-sentence

that exceeds the guidelines, that claim is further buttressed by two prin-

ciples. First, contract principles prohibit interpretations that would de-

prive a party of the benefit of the bargain. *See Kingsley*, 851 F.2d at 21.

Such full deprivation would be sanctioned if the government could get an

agreement in one matter and undermine it in another inextricably linked

matter. All parties treated these matters as linked.

The revocation was predicated on the new case, A458, with another

district court transferring the revocation to the sentencing judge in the

new case, observing: "The revocation proceeding are based on the crim-

inal conduct in 20-CR- 374-DRD." A442-A443. And Mr. Mojica's plea

agreement necessarily demanded he waive his right to the "guilt"

dimension of revocation proceedings. Such a burden on constitutional rights cries out for enforcement of contract law to conduct in both cases: "A guilty plea is a waiver of fundamental constitutional rights — 'perhaps the most devastating waiver possible under our Constitution.'" *United States v. García*, 698 F.2d 31, 37 (1st Cir. 1983) (quoting *Dukes v. Warden*, 406 U.S. 250, 258 (1972) (Stewart, J., concurring)). Mr. Mojica was entitled to an actual guideline sentence in the criminal case and was entitled to action in the revocation matter that did not negate that entitlement. The government breached when it sought and additional revocation sentence to add at least 30 months atop the colossal 72-month sentence already imposed. AB43- AB46.

### G. Remand should be ordered with low-end concurrent sentences.

The government opposes remand to a different judge for sentencing at the low-end of the guideline ranges. AB53- AB55. It doesn't explain how this request is consistent with *Santobello* and this Court's caselaw. G36. It's not. *See* AB53- AB55; *United States v. Kurkculer*, 918 F.2d 295, 301 (1st Cir. 1990). The government is also concerned about remanding both the criminal case and the revocation to a new judge. But that's necessary given the breach's impact on both cases and the egregious

nature of the breach. AB53- AB55. As this Court held in *García*, if "specific performance would be … infeasible, a court may order imposition of a specific sentence." *García*, 698 F.2d at 37. All told, "further proceedings are not in the interests of justice," *id.*, here: low-end concurrent sentences are an appropriate remedy to deter future government breaches. AB53-AB55. Enforcing plea contracts firmly not only ensures "constitutional rights are respected, but also that the integrity of the criminal process is upheld as plea agreements are respected as 'pledges of public faith.'" *United States v. Papaleo*, 853 F.2d 16, 19 (1st Cir. 1988); *Puckett v. United States*, 556 U.S. 129, 142-43 (2009) ("[W]hen the Government reneges on a plea deal, the integrity of the system may be called into question.").

## II.   REPLY REGARDING THE UNREASONABLE 11-YEAR SENTENCE

The government's brief argues for affirmance of both sentences despite the court reliance on the government's digital file submission, reliance on an undeveloped hypothesis that automatic pistols categorically fall outside the "machine gun" guideline, and reliance on the court's beliefs about violent propensity of the Puerto Rico population. Vacatur of the sentences remains warranted.

### A.    The Digital File Dump

The government claims the sentencing judge never "relied on the photographs [and videos] attached to the government's sentencing memorandum when imposing the upwardly variant sentence." G18-G19; *see also* G38-G39. While the court affirmatively adopted the government's submission, *see* AD20-AD40, the government downplays reliance because the adoption was in a pre-sentencing-hearing order. If anything, that makes things worse because the court had more time to contemplate them. And the government has no defense against Mr. Mojica's argument that the court adopted the position that the digital files show Mr. Mojica to be associated with violent crime in Puerto Rico, exceptional danger, and nearly certain recidivism. AB61.

The government doesn't disclaim reliance on its memorandum, which had seventeen separate images embedded within it. A55-A58. The memorandum relentlessly referenced the government's image files and hand-delivered video. *See, e.g.*, A55 ("An assortment of images has been provided for the Court's review…, and the images below reflect a very small sample of Defendant's apparent infatuation with firearms").

"Sentencing memoranda, which contain the substance of the parties' arguments for or against an outcome, are clearly relevant to a studied determination of what constitutes reasonable punishment. … [S]entencing memoranda are meant to impact the court's disposition of substantive rights." *United States v. Kravetz*, 706 F.3d 47, 56 (1st Cir. 2013); *see also* Fed. R. Crim. P. 32(e). Saying the court didn't consider the government's sentencing submission, A53-A307 (accepted over objection), disregards the federal sentencing framework.

Once past the claim the court overlooked the government's submission, the government fails to overcome analysis showing the unreliability of its digital submission, which infected both sentences with reversible error. *See* AB58- AB61.

## B.  Upward Variance for Gun Characteristics

### 1.  Preservation.

The government alleges waiver. G43-G44. Counsel objected, however, to the court's stated "*Kimbrough* variance" with "sufficient specificity such that the district court is aware of the claimed error." *United States v. Castillo*, 981 F.3d 94, 101 (1st Cir. 2020) (citations omitted). The government does not allege the court was not aware. The government doesn't raise its waiver claim under Fed. R. Crim. P. 51(b). Rather it

claims the sort of upward variance was so expectable that litigants should expect it coming without any notice within the record. While this is wrong for reasons we explain, it's enough to know the government and the court were aware of Mr. Mojica's objection.

Nevertheless, the government brief expresses confusion. Did we oppose a variance under the court's automatic-gun-possession hypothesis or something else? *See* AB61- AB65. Mr. Mojica's objection straight-forwardly asserted that a sua sponte *Kimbrough* variance "was misplaced in this case[] as there was no information that was presented to the Court reliable enough" to support it "as required by the sentencing proceeding." A416. *Kimbrough v. United States*, 552 U.S. 85 (2007).

The government suggests this must be an objection to something else because the government did not overtly ask for a *Kimbrough* vari-ance. But the government supplied substantive arguments aimed at clas-sifying this case outside the heartland, arguing "[t]he nature of the offense in this case goes beyond the simple possession of a machinegun." A60. The United States has repeatedly sought upwardly variance affir-mance under *Kimbrough* even when *Kimbrough* wasn't named. This occurred in *United States v. Carrasquillo-Sánchez,* 9 F.4th 56, 61 n.2 (1st

Cir. 2021), and in *United States v. Flores-González*, 34 F.4th 103, 119 (1st Cir. 2022), *reh'g en banc granted, op. withdrawn*, 46 F.4th 57 (1st Cir. 2022).

The variance is just another dimension of the pronouncement used in *United States v. Rivera-Berríos*, 968 F.3d 130 (1st Cir. 2020), and numerous cases. The objection was an objection to what the judge had just said, that the court's hypothesis about difficulty controlling "pistols like the ones Defendant possessed are difficult" wasn't accounted for in the guideline range. A21. Moreover, Mr. Mojica had already confronted a presentence report asserting possession of machine guns warranted an upward variance. SA26.

### 2.    Sentences Based on Already-Accounted-For Factors and Failure to Explain

In response to the court's unnoticed "*Kimbrough*" variance based on a hypothesized unique danger of automatic pistols, the government argues its internet research reviewed "[p]ublicly available reporting on modified pistols." G45. These sources, it states, "confirm that controllability is an issue…." G45; *see* G45-G47. This resort to non-rigorous, outside-the-record material reinforces the unreliability of court's pronouncement. Where no conceivable measurement is at play, the court failed to

point to anything not "already fully accounted for by the sentencing guidelines." *Rivera-Berríos*, 968 F.3d at 136. This purported *Kimbrough* variance is supported by no data, no analysis of the guideline, and nothing that can be tested on appellate review. *See Kimbrough*, 552 U.S. at 91 (referencing need for "closer review" of variances "based solely on" undeveloped policy disagreements).

And since the government-drafted plea agreement required the parties to accept the applicable guideline range, it's unsatisfactory for the government to now allege the court's modified-gun-danger hypothesis evades the guideline's contemplation. The 18 U.S.C. § 5845(a) guideline, if anything, is overly severe. The commission increased the subject guideline repeatedly. In 1988, this case's base offense level ("BOL") would have been 12. *See* USSC, *Guidelines Manual*, § 2K2.2(a) (Nov. 1988). In 1989, the commission increased the § 5845(a) BOL from 12 to 16, over 33 percent. *See Guidelines Manual*, § 2K2.1(a)(1) (Nov. 1989); Amend. 189 (effective November 1989).

In 1990, the BOL was increased yet again, this time from 16 to 18, "to better reflect the seriousness of the conduct covered." *Guidelines Manual*, § 2K2.1(a)(1) (Nov. 1990); Amend. 333 (effective Nov. 1, 1990).

Under that guideline, courts have, like the government here, compared automatic pistols to "military grade high-capacity, high-powered weapons of war." A61; *see United States v. García-Pérez*, 9 F.4th 48 (1st Cir. 2021). But when this guideline encompasses prototypical machine guns with many rounds, this Court has been repeatedly unsatisfied as to why any given "defendant's machinegun possession 'was entitled to extra weight.'" *Id.* at 53-54 (citation omitted). Appellee's out-of-context citations about ammunition don't point to anything supporting the court's variances. G50-G53.

Consider the robust record in *Kimbrough* for a policy-disagreement-based variance. *Kimbrough*, 552 U.S. at 97-101. Here, the record was not developed. Firearm dynamics are empirically measurable characteristics. Are modified pistols two percent harder to control than commercially-manufactured ones? Five percent? Naked speculation cannot keep the Court's colossal upward variances afloat. *See United States v. Rivera-Ruiz*, 43 F.4th 172, 186 (1st Cir. 2022) ("[A] substantial variance … must be supported by a commensurately extensive explanation.").

### C.     Other Rationales.

The governments' assertion that the commission left other factors uncontemplated lack support in the record or the guidelines. G48-G53. And since the plea agreement straightjacketed Mr. Mojica's ability to affirmatively question the guideline range, the record was not fully developed. Yet, there is enough record to see that the government's search for variance justification, *see* G48-G55, remains ever linked the government's unsupported "comparison of ["Mr. Mojica's] non-violent offense[] to serious violent crimes." *Malone*, 51 F.4th at 1322. The non-violent gun-possession score, revocation guideline, and criminal-history score need no further juice to reflect the § 3553(a) factors.

The government's advocacy and the district court's pronouncement adopting it inflated the danger of the low-caliber pistol possession, butting up against its own quotation of the Ninth Circuit's opinion in *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012): "Short of bombs, missiles, and biochemical agents, the Court can conceive of few weapons that are more dangerous than machine guns." A408; *see Rivera-Berríos*, 968 F.3d at 136 (reversing where "the court did not explain why this factor,

which was already fully accounted for by the sentencing guidelines, was entitled to extra weight").

The district court committed reversible error in basing its sentence on unreliable material. And as already argued, the court's unfounded focus on Mr. Mojica's being part of the Puerto Rico community exacerbates the sentence's unreasonableness. AB68- AB69.

## CONCLUSION

This Court should reverse the sentences and remand for resentencing before a different judge. Alternatively, the sentences should be ordered reduced as discussed in Section I.

RESPECTFULLY SUBMITTED on September 5, 2023.

HÉCTOR L. RAMOS-VEGA
Interim Federal Public Defender
District of Puerto Rico

FRANCO L. PÉREZ-REDONDO
Assistant Federal Public Defender
Supervisor, Appeals Section

s/KEVIN E. LERMAN
Research & Writing Attorney
First Circuit Bar No. 1194361
Tel.: (787) 281-4922
Email: Kevin_Lerman@fd.org

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) by containing 6,424 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This is less than the 6,500-word limit.

2.     This brief — using a proportionally spaced typeface using a 14-point Century Schoolbook font — complies with Fed. R. App. P. 32(a)(5) and Fed. R. App. P. 32(a)(6).

September 5, 2023

**s/KEVIN E. LERMAN**
Research & Writing Attorney

## CERTIFICATE OF SERVICE

**CERTIFICATION:** I ECF-filed this **Reply Brief**, notifying the parties, including government counsel.

September 5, 2023

**s/KEVIN E. LERMAN**
Research & Writing Attorney